ATTORNEY GENERAL *vs.* MARCELLUS S. AYER & others.

Suffolk.     January 28, 29, 1889. — February 28, 1889.

Present: MORTON, C. J., FIELD, W. ALLEN, C. ALLEN, & HOLMES, JJ.

*Deed — Restriction — " Porch."*

A deed from the Commonwealth of land on a street upon the Back Bay in Boston stipulated that the front wall of any building erected thereon should be set back twenty-two feet therefrom, with a proviso that "porticos and other usual projections appurtenant to said front wall are to be allowed in this reserved space," subject to the limitations that no projection other than doorsteps, balustrades, and cornices was to extend more than five feet from the front wall into such space, and that "no projection in the nature of a bay window, circular front or octagon front, with the foundation wall sustaining the same, (such foundation wall being a projection of the front wall,) will be allowed," unless any horizontal section thereof would fall within a specified line. A stone porch was added to a front corner of a building erected on the land and set back as required, fifteen feet high, with a steep slate roof seven feet high, and with solid side walls projecting at right angles to the front wall, and, except for three or four inches in the lower courses of the underpinning, not extending more than five feet into and upon such reserved space, and not falling within such line, its walls and foundations being distinct from the front wall and its foundations. *Held,* that this porch was a "portico," or "other usual projection," within the meaning of the deed, and was not a "projection in the nature of a bay window, circular front or octagon front."

INFORMATION IN EQUITY, at the relation of the Harbor and Land Commissioners, for the removal of the porch of the Spiritual Temple, situated on the corner of Newbury Street and Exeter Street, on the Back Bay in Boston. Hearing before *W. Allen*, J., who reserved the case for the consideration of the full court, in substance as follows.

The defendants hold the premises in question under a deed from the Commonwealth, dated March 11, 1885, containing the following stipulations and agreement: " That any building erected on the premises shall be at least three stories high for the main part thereof, and shall not in any event be used for a stable or for any mechanical or manufacturing purposes ; that the front wall thereof on Newbury Street shall be set back twenty-two feet from said Newbury Street, provided that steps, windows, porticos, and other usual projections appurtenant to said front wall, are to be allowed in this reserved space of twenty-two feet, subject to the following limitations, namely :

first, that no projection of any kind (other than doorsteps and balustrades connected therewith, and also cornices at the roof of the building) will be allowed to extend more than five feet from said front wall into said space; and second, that no projection in the nature of a bay-window, circular front or octagon front, with the foundation wall sustaining the same, (such foundation wall being a projection of the front wall,) will be allowed, unless any horizontal section of such projection would fall within the external line of a trapezoid whose base upon the rear line of the aforesaid space does not extend seven tenths of the whole front of the building, nor exceed eighteen feet in any case, and whose side lines make an angle of forty-five degrees with the base; and each house in a block shall be considered a separate building within the meaning of this limitation. And said Commonwealth reserves the right to enter upon the premises by its agents, and at the expense of the party at fault, to remove or alter in conformity with the above stipulations any building or portion thereof which may be erected on the premises by said grantees, or their representatives or assigns, in a manner or to a use contrary to the above stipulations."

The defendants, holding a bond from the Commonwealth, dated July, 1883, for a deed of the premises with the same stipulations and agreement as the above deed, began in the latter part of 1883 to erect upon the land a building for a Spiritual Temple, with a porch at the northwest corner thereof, on Newbury Street, built of stone, fifteen feet high, with a steep slate roof seven feet high, with solid side walls projecting at right angles to the front wall of said building, into and upon the limited space of twenty-two feet. It was agreed that the porch did not come within the lines of the trapezoid described in the restrictions. The porch is closed in front by an iron gate. The walls and foundations thereof project from and are independent of the foundations of ʰe main building, which are continuous, and are not broken at ₁heir junction with the foundations of the porch. The foundations of the porch are bonded into those of the main building; and the eastern foundation wall of the porch is continuous with the eastern foundation wall of the building, but is narrower and lighter; the main wall of the building with its foundation being

thrown half of it upon the adjoining land, while the wall of the porch with its foundation is entirely on the defendants' land. The southern foundation wall of the main building is continuous, and unbroken and unchanged in construction where that of the porch enters it.

The lower courses of the underpinning of the porch project three and four inches beyond the five feet space; but the rest of the structure above these courses is wholly within the five feet. The porch is open within from the bottom to the top, and serves only as a protection to the main entrance of the building. The exterior of the porch was completed in September, 1884, and that of the entire building in the course of the autumn of that year. The building was finished and ready for occupancy in June, 1885.

Evidence was introduced tending to show that, at the date of the deed to the defendants, porches were usual projections upon buildings in Boston.

*H. C. Bliss,* Assistant Attorney General, for the plaintiff.

*W. G. Russell & G. Putnam,* for the defendants.

HOLMES, J.   The allowance of " steps, windows, porticos, and other usual projections appurtenant to said front wall " in the reserved space of twenty-two feet is shown not to be confined to projections closely similar to porticos, using that word in a narrow sense, by the limitation set upon the allowance when the projection is in the nature of a bay window or octagon front. Bay windows and octagon fronts cannot be said to resemble porticos, however the word " portico " be interpreted.   The general scope of the permission, then, is to sanction any projections incident to the front wall which are usual in the sense that porticos are usual.   The word " other " imports, of course, that porticos are usual within the meaning of the deed.   *Hubbard* v. *Taunton,* 140 Mass. 467, 468.

The same considerations which show the extended scope of the permission make against a narrow and restricted interpretation of the word " porticos."   If there is a permission to put out bay windows and octagon fronts, there is no conceivable reason why porches should be forbidden.   The Attorney General sought to interpret the requirement that certain structures should fall within the trapezoid as a new permission.   But, plainly, it is not so, but is a qualification of a permission already given to put

out porticos and other usual projections. If this porch was not permitted under the head of porticos and other usual projections, it was not permitted at all. See *Linzee* v. *Mixer*, 101 Mass. 512; *Attorney General* v. *Gardiner*, 117 Mass. 492, 500.

Etymologically the words "porch" and "portico" are one. Formerly porch was used as synonymous with portico in its classic sense. "And he made a porch of pillars; the length thereof was fifty cubits." 1 Kings, vii. 6. The tendency in modern times, no doubt, has been to diminish "porch" to the shelter in front of the door of a building, and we are very willing to assume that, with the constant growth of distinctions and nice discriminations in the meaning of words, "portico" retains more of the original suggestion of length and of a roof supported by pillars, among architects and scholarly persons, and that porch is more specially appropriated to a smaller structure, generally with closed sides. But the distinction is not carefully preserved in common speech. With us portico, as well as porch, has shrunk, and usually means a shelter in front of a door. See Dyche & Pardon's Dict. 1754, also Imperial Dict. 1882, *Portico*. When porticos are cut down to the little structures which we all know, we think that special reference to the mode of support has vanished almost as completely as to the length. The parties to this deed did not mean by portico "a walk covered with a roof, supported by columns at least on one side." They meant the shelter to the door of a building, familiar to Massachusetts and to Boston. We are of opinion that they used it as a generic word, including a shelter with closed sides, as well as one with pillars. We agree that in determining the scope of the word we must look at the object of the restrictions and of the exceptions to it. But, as we have said, the permission extends to more serious structures, with closed sides, and therefore there is no reason for excluding porches. Indeed, a portico projecting not more than five feet would, or at least might, obstruct the view of a neighboring house with its pillars almost as completely as if its sides were closed.

In view of our construction of the word "portico," we have not studied the evidence that porches were usual projections in Boston at the date of the deed. They would seem to have been. We cannot agree to so nice a distinction as that taken in re-

spect of their position on the building, or that, if a porch in the middle of a front wall was a usual projection, one adjoining the partition wall would not be. If the projection was a usual one on any part of the front, it was permitted anywhere, subject to restrictions recited in the deed, which dealt with its extent and place.

It was argued that, if porches were permitted at all, then they were " projections in the nature of a bay window, circular front or octagon front," and must be kept within the trapezoid prescribed. This argument is not without force when the objects to be prevented are considered. Still, we are all of opinion that it would be pressing the language beyond its fair scope, if we should extend it beyond projections of the front wall of the building, in view of the words which follow those just quoted; namely, " with the foundation wall sustaining the same (such foundation wall being a projection of the front wall)." The walls and foundations of the present structure are distinct from the front wall of the building and its foundation.

<em>Information dismissed.</em>