THE TOWN OF DARIEN ET ALS. *vs.* C. POND WEBB ET AL.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued June 10th—decided October 25th, 1932.

*Joseph L. Melvin,* for the appellants (defendants).

*Raymond E. Hackett,* for the appellees (plaintiffs).

HINMAN, J. The defendant Webb is the owner of premises in Darien consisting of a lot on which is a wooden building. The lower floor of this building consists of one large room with two annexes, one fitted with bathroom fixtures and the other for kitchen purposes. The second floor originally consisted of one large room with no toilet facilities, but before the period here involved the owner had made alterations for the purpose of making the house habitable as a residence, including the installation of a bathroom and the placing of partitions on the second floor. The property is seasonal in nature and is fitted and equipped for summer occupancy only. It is located in the midst of a beautiful residential section and there is no other store or place of business within three quarters of a mile.

On December 10th, 1925, the town adopted zoning

regulations placing these premises in an A Residence Zone. These regulations contain a provision (Section II) that "in a residence zone, subject to the provisions of Section V, no building or premises shall be used and no building shall be erected or altered which is arranged, intended or designed to be used except for one or more of the following uses." The uses specified do not include any hereinafter mentioned except residential. Section V provides that "Any nonconforming use existing at the time of the passage of these regulations may be continued and any existing building designed, arranged, intended for, or devoted to a nonconforming use may be reconstructed and structurally altered, and the nonconforming use therein changed subject to the following regulations: a. The total cost of structural alterations made in such building shall in no case exceed fifty per cent of its assessed value, nor shall the building be enlarged unless the use therein is changed to a conforming use. b. No nonconforming use shall be extended at the expense of a conforming use. c. In a residential zone, no building or premises devoted to a use permitted in a business zone shall be changed into a use excluded from a business zone."

On the date of the adoption of these regulations the building in question was rented and used for a restaurant and tea room, and continued to be so used until about February 1st, 1927. Thereafter the premises were idle until about July 1st, 1927, when they were rented to a Mrs. Fauntleroy, who used them as a summer residence until about September 1st, and again from June to October, 1928. From September, 1927, to June, 1928, Webb permitted Mrs. Fauntleroy to keep her furniture and household equipment in the premises free of charge. From October 1st, 1928, the premises were vacant until September 20th, 1929, from

which date until March 30th, 1930, they were rented to a firm of contractors, who used the building as a business office and for storage of materials for work on a bridge being constructed nearby. The property was again idle from March 20th, 1930, to May 15th, 1930, when it was leased to the defendant Vickers, who used the building as a restaurant and tea room until the latter part of October, 1930. In September, 1931, Webb leased the premises to a Mr. Donahue for use partly for residential purposes and partly for the conduct of a general store or merchandising business. As the defendant Vickers, who was in possession at the time of service in this action, vacated the premises before judgment, we refer hereafter only to Webb as defendant.

The record indicates that the single decisive question upon the trial was whether the uses to which the property was devoted subsequent to December 10th, 1925, constituted a continuance of a nonconforming use within the meaning of Section V of the regulations so as to entitle the defendant to the benefit of the exception, created by that section, to the general prohibition, under Section II, of use for business purposes in a residence zone. The plaintiffs claimed on the trial that as the building has since been used for a substantial period of time for residential purposes—a conforming use—the resumption by the defendant of use thereof for business is not within the terms of Section V, and the trial court so held. Determination of this appeal depends upon whether the provision of Section V, that a "nonconforming use existing at the time of the passage of [the] regulations may be continued," is satisfied by the facts found as to the subsequent uses of the defendant's building.

The main claim of the appellant is that the regulations contain no provisions as to how or under what

circumstances the right to a nonconforming use existing at the time of passage is terminated, as by devotion of the premises to a conforming use, and that the right is not lost but remains available for exercise by resumption unless and until the building is so altered as to be no longer adapted to nonconforming uses. We agree that sanction for deprivation of the right must be afforded by and found in the terms of the regulations construed strictly but fairly. Reading the pertinent provisions of Section II and Section V together, as we must, we find, in substance, an enactment that no building or premises in a residence zone shall be used for nonconforming purposes, except that any such existing use "may be continued."

In determining the scope and meaning of the phrase just quoted "we must look at the object of the restrictions and the exceptions to it." *Attorney General* v. *Ayer*, 148 Mass. 584, 587, 20 N. E. 451. The ultimate object of zoning ordinances is to confine certain classes of buildings and uses to designated localities or districts. The continued existence of nonconforming uses is inconsistent with that object and it is intended that conditions be reduced to conformity as speedily as possible without working substantial injustice to the interests of those who are making nonconforming uses of property at the time of the adoption of the regulations. Avoidance of such injustice is the purpose of exceptions such as are contained in Section V. The accepted method of accomplishing the ultimate object is that, while the alien use is permitted to continue until some change is made or contemplated, thereupon, so far as is expedient, advantage is taken of this fact to compel a lessening or suppression of the nonconformity. *Thayer* v. *Board of Appeals*, 114 Conn. 15, 23, 157 Atl. 273; *Lathrop* v. *Norwich*, 111 Conn. 616, 623, 151 Atl. 183. From the purpose of the restriction

and the exception now under consideration it is plain that "continue" is employed in the sense of to keep up or maintain a particular condition, course, or series of actions without such intervention as will break the continuity. Webster's New International Dictionary; *Bridges* v. *Koppelman,* 117 N. Y. Sup. 306; *Elwell* v. *Elwell,* 128 N. Y. Sup. 495; 1 Words & Phrases (2d Series) 971, 972; *Belknap* v. *Belknap,* 2 Johns. Ch. (N. Y.) 463-465; 2 Words & Phrases (1st Series) p. 1508. Under this construction, temporary nonoccupancy of the premises or interruption or suspension of a nonconforming use without substitution of a conforming use or conduct significant of abandonment would not work a termination of the right to resume the former, but this result ensues from such a definite and substantial departure from the previously existing conditions and nature of use as is constituted by the use of the defendant's premises for residence purposes in 1927 and 1928. The resumption of business uses thereafter cannot fairly be regarded as a "continuance" of the business uses which preceded the period of residential occupancy.

We do not attach the significance claimed by the defendant to the absence from the Darien regulations of the specific provisions, found in some zoning ordinances, concerning the effect of abandonment or discontinuance of a nonconforming use, or of a change therefrom to a conforming use, upon the right to thereafter resume a nonconforming use. Two of those cited (Norwich and Fairfield) expressly state what we have held necessarily to be implied from the "continued use" provision, viz.: that benefit of the exception is lost by intervention of a conforming use, and the others expressly limit to one year the period of abandonment or discontinuance allowed without loss of right to resume or replace with another nonconforming use.

In view of the effect of the change of use under our construction of the regulations, it would be immaterial if, as the defendant claims, the owner, notwithstanding such change, entertained an unmanifested intention not to permanently abandon use of the property for business purposes.

Upon the facts found, the trial court concluded that the defendant, having for a substantial period voluntarily ceased to use his property for nonconforming purposes and devoted the use of it to residential purposes, has lost the protection which was his under Section V of the regulations, cannot now avail himself of the exemption accorded him under that section, and may not use the premises for or revert to the nonconforming use which was existing at the time when the zoning regulations were adopted. For the reasons which we have stated, we hold this conclusion to be warranted by the facts and sound in law.

Consideration of the question sought to be raised by assignments to the effect that an order or demand, by the building inspector, for discontinuance of the use of the premises for business purposes—with a consequent right of appeal to the board of appeals and adjustments, first should have been resorted to instead of the present action—is not open to us on this record. An amendment of the finding states that no such claim was made on the trial, the only issue being the one which we have discussed. The excerpt from the trial brief which the appellants sought to have made part of the record in support of an effort to correct the finding was excluded by the trial court and no attempt was made in this court to have it inserted. Therefore, recourse to it is not available. But if the question were before us, we could not find that the present proceeding would not lie. The regulations contain no provision for a penalty for a breach, and we pointed

out in *Coombs* v. *Larson,* 112 Conn. 236, 244, 152 Atl. 297, that in such a situation an injunction is a proper remedy for the enforcement of zoning regulations. We see no sound reason for holding that the building inspector must order the cessation of a prohibited use of a building, affording opportunity for an appeal from his order, before an injunction may be sought, any more than such a procedure would be necessary before a prosecution could be inaugurated to enforce a penalty for the violation involved. Also, the defendants could not have been advantaged by the suggested procedure; the determinative issue upon an appeal to the board, and from it to the courts, obviously would have been the same as that raised and decided in the present action with less circuity, delay, and expense.

The further claim is made that the informal permission given by the building inspector to the defendant Webb to relay a floor in the building so that it might be used as a tea room and the conduct of Webb in making this change creates an estoppel constituting a defense to this action. It appears that Webb leased the premises for a year for use as a restaurant and tea room and the only prejudice he can claim is by reason of the refusal of the tenant to exercise a right of renewal given in the lease. However, this refusal is found to be in part due to a need for larger quarters which, if the tenant were to continue in the building, would necessitate its enlargement, and it does not appear that she would have renewed the lease had the use of the building for business purposes been permissible. No prejudice to the defendant from the permission given by the building inspector to relay the floor, sufficient to establish an estoppel, appears.

There is no error.

In this opinion the other judges concurred.