Heffernan, J.
On December 27,1937, the City of Binghamton adopted a zoning ordinance which became effective on January 12,1938, and is still in existence.
The pertinent provisions of that ordinance which relate to the questions presented for decision are:
“ Section 7 — Use Regulations.
“ ‘ H ’ Business District and ‘ I ’ and ‘ J ’ Light Industrial Districts. In the ‘ H ’ Business District and the ‘ I ’ and 1 J ’ Light Industrial Districts all buildings and land, except as otherwise provided in this ordinance, may be used for any use permitted in the Commercial Districts or for any other use except the following:
#41. j/. W TV
W TV
“ 7. Automobile wrecking.
*459 “ 59. Storage or baling of rags, iron or junk, including junked automobiles.”
Section 10 provides: “ The lawful use of land existing at the time of the passage of this ordinance although such use does not conform to the provisions hereof, may be continued, but if such non-conforming use is discontinued, any future use of such premises shall be in conformity with the provisions of this ordinance.”
The premises involved in this controversy, which are situated in the “ H ” business district as defined in this ordinance, consist of a lot of land 75 feet wide and 150 feet deep located at and known as 20 Sanford Street in the city of Binghamton. On the rear portion of the lot there is an old barn. At one time there was a house on the front portion but that was demolished many years ago.
Sanford Street is a short highway with ten lots on each side, on some of which there are no structures. In addition to the premises at No. 20 there are four other junk yards on the street.
Defendant purchased this property on July 10,1944, from one Edelstein who had acquired title thereto in 1919.
On April 24, 1947, the respondent instituted this action to enjoin defendant from using the premises as a junk yard in violation of the ordinance. After a trial of the issues judgment was rendered in favor of respondent and from that determination appellant has come to this court.
It is undisputed that when the zoning ordinance became effective the premises were being used as a junk yard and had been so used continuously since 1919, and the court below has so found.
On this appeal it is the contention of respondent that from 1940 to 1944, when appellant came into possession of the property, the premises were not actively used in conducting the junk business and that consequently the right to operate such an enterprise has been lost by abandonment.
Although other questions are discussed in the briefs of counsel we need not pause to consider them. The decisive issue in this case is what constitutes a discontinuance or an abandonment of a nonconforming use within the meaning of the ordinance. The court below awarded respondent an injunction on the theory that there had been a discontinuance of a nonconforming use, that of a junk yard or junk business.
The general rule is that the right of a property owner to continue a nonconforming use may be lost through abandonment of *460 such use. However, an abandonment within the meaning of the rule under consideration connotes a voluntary, affirmative, completed act. It means something more than a mere suspension, a temporary nonoccupancy of a building, or a temporary cessation of business and this has been held true even though the discontinuance existed over a considerable period of time (58 Am. Jur., Zoning, § 153 and cases there cited).
Abandonment in law depends upon the concurrence of two and only two factors; one, an intention to abandon or relinquish; and two, some overt act, or some failure to act, which carries the implication that owner neither claims nor retains any interest in the subject matter of the abandonment (Landay v. Zoning Appeals Board, 173 Md. 460). In the case cited at the time of the adoption of a zoning ordinance the premises involved were devoted to a nonconforming use, namely, a junk shop. The business was carried on by a tenant. After the termination of the tenancy the premises remained vacant for three years, not being used, except casually, for any purpose, when a purchaser sought a certificate of occupancy for a junk shop. The city authorities denied the application. The Baltimore City Court sustained that determination but the Maryland Court of Appeals reversed the judgment of the lower court, directed the issuance of the certificate and held that there was insufficient evidence to prove a legal abandonment and that the mere cessation or discontinuance of the use, without the substitution of another use, or without evidence of an intent to abandon the nonconforming use, did not result in a loss of right to resume such use.
Time is not an essential element of abandonment although the lapse of time may be evidence of abandonment. It is a universally accepted principle that mere nonuse of property over a period of time, when unaccompanied by any other acts indicating an intention to relinquish or abandon title thereto or ownership thereof, does not amount to an abandonment (1 C.J.S., Abandonment, § 3, and cases there cited).
There is no provision in the ordinance which we are construing that mere nonuse for any specified period should be considered a discontinuance. The reasoning as well as the conclusions in the authorities cited is consistent with the principle that unless so stated in the ordinance cessation or discontinuance of a nonconforming use without the substitution of another use, or without evidence of an intent to abandon the nonconforming use, will not prevent its resumption.
*461 In State ex rel. Schaetz v. Manders (206 Wis. 121, 124) the premises in question had been operated for many years as a dairy in a residential zone. The corporate owner became insolvent and the receiver did not continue the business. A buyer sought a permit to use the premises as a dairy and this was refused on the ground that there had been a discontinuance of a nonconforming use. The wording of the zoning order in the case with respect to discontinuance of nonconforming uses was identical with that of the zoning ordinance of the City of Binghamton. In holding that the permit should have been issued, the Supreme Court of Wisconsin stated: “ It was plainly the intent of the ordinance to permit the continuance of non-conforming uses. While we have found no authority construing the legal meaning of the word ‘ discontinue,’ we think that, as used in this ordinance, it means something more than a mere suspension. It was not the intention of the ordinance to destroy the right of an owner to continue the use of his premises by the mere fact that his tenant became insolvent. We agree with the circuit court that * ‘1 discontinue,” as it is used in the ordinance, cannot mean a temporary non-occupancy of the building or a temporary cessation of the business * * *. The word “ discontinuance ” * * * is synonymous with abandonment. It connotes a voluntary, affirmative, completed act.’ We think the right secured to the owner * * * is not lost by either accident or unpropitious circumstances over which he has no control which brings about a mere suspension of the nonconforming use. It is a right * * # to be enjoyed by him until he voluntarily relinquishes or abandons it.”
In Lehmaier v. Wadsworth (122 Conn. 571, 576) the defendant owned land used as an airport, but at the time the ordinance affecting the property was passed that use had been discontinued. The trial court found such discontinuance, but held that the nonconforming use had not been lost because the property had not been devoted to a conforming use before the resumption of the nonconforming use. In reviewing that conclusion, the appellate court said: “ The temporary interruption or suspension of a nonconforming use without substitution of a conforming one or such a definite and substantial departure from previously existing conditions and uses as to signify an abandonment of the latter, does not terminate the right to resume them. Darien v. Webb, 115 Conn. 581, 586, 162 Atl. 690; State ex rel. Schaetz v. Manders, 206 Wis. 121, 238 N. W. 835. Even if the defendant had in mind the possibility of a future change in use, so long as his operations had a legitimate present purpose and *462 utility appropriate to the existing uses there would not be such departure from the latter as to require a finding of a present change terminating his right to continue them. No such substantial change can be made in the finding as would vitiate the conclusion that the property has not been devoted to a conforming use in substitution for those which were nonconforming.”
Tested by these principles the record in this case contains no substantial evidence to establish legal abandonment. From 1940 to 1944 Edelstein did nothing which was inconsistent with an intention to continue the nonconforming use. It is true that during this period there was very little activity in the conduct of the business. However there was an occasional purchase of junk and the court below has so found.
Edelstein was a very elderly man whose health was impaired and his son who had assisted him was in the military service. When the' son returned he was ill and unable to work and the premises and the junk were sold to defendant. During all this time the barn was packed with tons of stored waste materials and the rest of the lot continued to be used for storage of scrap metals. During his son’s absence Edelstein employed one Pristi to watch the property stored in the barn and yard in return for permission to use a part of the yard as a garden.
The evidence clearly shows that the material stored on the premises had not been abandoned, but had been retained by the owner waiting for a favorable market. The fact that he employed a watchman to guard the property is definite proof that there was no intention to abandon it. Whether the business was actively operated or not during these years is of little moment. There was always the “ storage ” prohibited by the ordinance.
The judgment appealed from should be reversed on the law and facts and the complaint dismissed on the law, with costs to appellant.
Bbewsteb, Deyo, Santby and Bebgan, JJ., concur.
Judgment appealed from reversed on the law and facts and complaint dismissed on the law with costs to the appellant in both courts.
This court reverses findings of fact Nos. 5, 6 and 7 of the decision of the court below.
This court finds that prior to and since the adoption of the zoning ordinance the premises in question have been used as a junk yard and for the sale of junk and that defendant and his predecessors in title have continuously conducted a junk yard on such premises; that defendant and his predecessors in title have
*463 never discontinued the operation of a junk yard or junk business and that the right to continue such use has not been lost through abandonment.
The court annuls the decretal provisions contained in the decision.
The court makes the following conclusions of law:
(1) That plaintiff is not entitled to maintain this action.
(2) That defendant is entitled to continue the operation of a junk yard and junk business on the premises in question and that the right to operate and continue such use has never been lost or abandoned by defendant or his predecessors in title.
(3) That defendant is entitled to recover from plaintiff costs in this court and in the court below.