## Patelmo v. Zoning Board of Adjustment

*Frank J. Marola, Jr.*, for plaintiff.

*Lenard L. Wolffe*, Assistant City Solicitor, and *David Berger*, City Solicitor, for defendants.

MacNEILLE, P. J., December 12, 1956.—We are considering an appeal from the refusal of the zoning board of adjustment to grant a permit for use of premises 5836 Wakefield Street, Philadelphia, as a grocery store in a "D-1" residential district. On an earlier appeal we remanded the record to the board for the purpose of determining whether or not the subject property was used as a grocery store prior to August 10, 1933, and whether or not it was properly to be classified as a nonconforming use. On the second hearing, the zoning board again sustained the action of the zoning administrator and refused to grant the requested use registration permit.

A single important question is presented. Where a property was in use prior to the effective date of the Philadelphia Zoning Ordinance, so that it thereafter was a nonconforming use, is such right lost in the event that the use is thereafter brought into conformity with the requirements of the zoning law?

The subject premises were used as a grocery store prior to 1933. In early 1935, such use was discontinued but the physical appearance of the building as a grocery store continued. In 1946 the store front appearance and the bulk windows were removed and the property assumed a complete residential appearance. Since 1935 the property has been in use as a one-fam-

ily dwelling. The portion of the building which was formerly used as a store has been used as a living room for a one-family dwelling. In order to reconvert to a grocery store, it would be necessary to again alter the physical appearance of the building and to renovate the present living room.

The parties have submitted the matter on their respective contentions as to the construction of applicable provisions of the General Code of Ordinances, and we shall, therefore, confine our disposition to the provisions as set forth in the code. Section 14-104 pertinently provides as follows:

"(1) *General*. Any building, or the use of any land or building or portion of a building, which was a nonconforming building or use under the terms of the Ordinance of August 10, 1933, as amended, shall continue to be considered a non-conforming building or use, which may continue at the same location, but shall be subject to the provisions of this Section governing non-conforming buildings and uses. . . .

"(4) *Change of Use*. A non-conforming building or use shall be considered as such unless and until it complies with the requirements of the district in which it is located. Such use shall not be changed to a use designated for a district having less restrictive requirements.

"(5) *Discontinued Use*. A non-conforming use when discontinued may be resumed as the same non-conforming use and no other."

We are of the opinion that the language in paragraph (4) is clear and unequivocal. The intent of the legislative body is obvious that a nonconforming use may be considered such until and unless there is a compliance with the established zoning pattern; nonconforming rights or status are surrendered by conformity. Appellant earnestly contends that paragraph (5) specifically provides for the preservation of noncon-

forming rights, that there is no provision in the code for a "death sentence" as to a nonconforming use, except where there is a destruction of the building by fire or condemnation. We do not agree. Both of these paragraphs must be read together to avoid contradiction. Although paragraph (5) provides for resumption of a discontinued use, paragraph (4) operates in limitation of such right if there intervenes an actual compliance with the district requirements. Paragraph (5), therefore, applies only to nonconforming uses in the absence of building compliance and use compliance.

Appellant cites Kellman v. McShain, 369 Pa. 14 (1951), wherein it was held that a nonconforming use could be resumed five years after an explosion. That case, however, simply pointed out that there was no provision in the ordinance limiting the right of resumption after explosions, that the limitation in the ordinance was restricted to fire. In this case there is an express pertinent limitation when conformity occurs. Appellant also cites Bennett v. Zoning Board of Adjustment, C. P. No. 2, March term, 1955, no. 624, and Null v. Zoning Board of Adjustment, 10 D. & C. 2d 605, wherein it was held that nonconforming uses were not abandoned.[1] In the Null case Judge Flood stated:

"Appellant carried on a nonconforming use, manufacturing machine nuts and screw products, upon the premises in question, in a 'C' residential district, from before August 10, 1933, until 1942. From then until 1954 he used the premises for storage. He then applied for a permit for a 25 percent extension, intending to resume the earlier use. This was granted by the zoning administrator, but on appeal, the zoning board reversed, holding that the earlier use had been abandoned and could not be resumed as a nonconforming use.

---

[1] This case was affirmed per curiam by the Supreme Court on Judge Flood's opinion in 391 Pa. 51.

"The only provision of the ordinance which refers to a situation such as this is chapter 14-104(5) which provides that: 'A non-conforming use when discontinued may be resumed as the same non-conforming use and no other.' This so precisely fits the situation before us that we feel that it must be applied.

"The city argues that this long discontinuance is an abandonment, not a discontinuance. No Pennsylvania cases so hold and the holding of Judge Lewis in Bennett v. Zoning Board, C. C. P. No. 2, Philadelphia County, March term, 1955, no. 624, is to the contrary. Our ordinance could no doubt provide that a discontinuance for a certain period is an abandonment or equivalent to an abandonment. See Elkins-Rydal Co. v. Brigham, 84 D. & C. 136 (1952). But our city council has not seen fit to do so.

"We do not hold that discontinuance, together with certain other facts, might not constitute abandonment. Mere passage of time, however, is not enough under the language of the ordinance."

Neither the Bennett or Null cases involved the question we are considering, for in neither of them was there a question of compliance. The case of Molnar v. George B. Henne & Co., Inc., 377 Pa. 571 (1954), which was an appeal from this court, does not support appellant's position. In the Molnar case the court discussed the right to resume a nonconforming use in a lower class. It may be noted that in the adoption of the code, city council carefully altered the language of the 1933 ordinance so as to restrict resumption to "the same nonconforming use" as distinguished from "the same class of use".[2]

---

[2] Section 4(4) of the Zoning Ordinance of 1933 provided as follows:

"*Discontinued Use.* A non-conforming use when discontinued may be resumed as the same class of use but cannot be resumed as a non-conforming use of a lower class."

In view of what we have stated, it appears that the entire matter is governed by the construction of the code. It has not been suggested that city council has exceeded its authority, and we are of the opinion that the limitation on resumption of nonconforming uses is both reasonable and desirable.

We are of the further opinion that, in any event, appellant has abandoned any nonconforming use. In Town of Darien v. Webb, 115 Conn. 581, 162 Atl. 690 (1930), it was held, even in the absence of a legislative restriction, that a voluntary compliance resulted in a loss of nonconforming rights. The court there stated:

"We do not attach the significance claimed by the defendant to the absence from the Darien regulations of the specific provisions, found in some zoning ordinances, concerning the effect of abandonment or discontinuance of a nonconforming use, or of a change therefrom to a conforming use, upon the right to thereafter resume a nonconforming use. Two of those cited (Norwich and Fairfield) expressly state what we have held necessarily to be implied from the 'continued use' provision, viz.: that benefit of the exception is lost by intervention of a nonconforming use, and the others expressly limit to one year the period of abandonment or discontinuance allowed without loss of right to resume or replace with another nonconforming use. In view of the effect of the change of use under our construction of the regulations, it would be immaterial if, as the defendant claims, the owner, notwithstanding such change, entertained an unmanifested intention not to permanently abandon use of the property for business purposes.

"Upon the facts found, the trial court concluded that the defendant, having for a substantial period voluntarily ceased to use his property for nonconforming purposes and devoted the use of it to residential purposes, has lost the protection which was his under Sec-

tion V of the regulations, cannot now avail himself of the exemption accorded him under that section, and may not use the premises for or revert to the nonconforming use which was existing at the time when the zoning regulations were adopted. For the reasons which we have stated, we hold this conclusion to be warranted by the facts and sound in law."

We consider this principle to be sound. Nonconforming uses as hidden rights in a metropolitan area should be sharply restricted. Although we cannot undertake to spell out any particular period of time as constituting an abandonment of a nonconforming use as a matter of law, we are of the opinion that the lapse of more than 20 years is at least a presumptive abandonment, that an intervening compliance is an absolute confirmation of such abandonment.

In reaching our conclusion, we have carefully considered the fundamental principles which underlie the reservation of nonconforming rights. The exception is a conscious recognition of the due process requirement of all Anglo-Saxon law. It contemplates recognition that the individual property owner stands on an equal basis with his government in the beneficial ownership of his property, that his property or the beneficial use thereof may not be taken from him directly or indirectly without proper and adequate compensation. In the retroactive application of zoning laws, there is implicit faith in the possibility of destruction of beneficial use of a property. Therefore, there has been carved out, whether by way of statutory reservation or not is immaterial, a constitutional boundary beyond which the legislature may not zone. To protect ownership at the time of the adoption of a prospective zoning statute or ordinance, there arose the doctrine of nonconforming uses. Although the legislature may expand nonconforming rights beyond constitutional minimums, it is not required to do so.

It should be clear that where there has been an actual compliance with zoning requirements the very purpose for reserving nonconforming rights has ceased. Such limitation, as we stated above, is valid and reasonable.

We need not consider the second question as to the propriety of the board's refusal of a variance further than to note that there was certainly no abuse of discretion in such refusal. Appellant has not presented any argument on such second contention.

Wherefore, we enter the following

### Order

And now, December 12, 1956, the within appeal is dismissed and the decision of the zoning board of adjustment is affirmed.