[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff has taken this appeal from a decision of the defendant zoning board of appeals upholding the issuance by the city's zoning administrator of a cease and desist order against the plaintiff's use for business purposes of property owned by him at 35-37 Standish Street in the city of Hartford. He claims that the property has been continuously maintained as a nonconforming retail/business use from the time that he purchased it in 1983 and that there is no reasonable basis in the record for the board's finding that the nonconforming status of the property has been lost.
The evidence offered at the hearing establishes that the property consists of a dwelling with an attached addition which was operated for many years by the DeLillo family as a grocery store. The DeLillos lived in the house and continued the grocery business until 1970 or 1971 but it is not known when they actually sold the property to the subsequent owner.
When the present zoning ordinance was enacted in 1968, the store became a nonconforming use because it was located in a residential (R-3) district. Record item 7. After the DeLillos moved out the store was rented by the Zito Pharmacy's a satellite to its main store on Wethersfield Avenue and was used for the storage and display of medical equipment and appliances.
The plaintiff purchased the property in February, 1983 (Supplemental record item 8) and Zito's use of the premises continued until December, 1984. On February 1, 1985, the plaintiff entered into a written lease for a term of one year from that date with the Canicattinese Society, a social club. Record item 9.
The plaintiff was given written notice on February 19, 1985, that the use of the premises as a social club was not a permitted use in an R-3 zone and ordered that it be terminated. Supplemental record item 2. Although Section 35-11.3 of the Hartford Municipal Code expressly provides for the exchange of a nonconforming use with certain other specifically listed uses, the use of property by a social club is not listed as an interchangeable use that may be utilized to preserve and continue an existing nonconforming business use. Record item 7.
The next use of the premises was for a flower shop from August, 1985 to January, 1986. Record item 19, p. 11. In February, 1986, after the store was rented to the Colt Firearms labor union for use by its members who were then on strike, the plaintiff was ordered to terminate that use because it came CT Page 6219 under the category of "Labor Union and Similar Labor Associations" which is not a permitted interchangeable nonconforming use. Record item 4.
On July 28, 1986, the department of licenses and inspections notified the plaintiff that a previous letter that it had sent on July 11th had incorrectly stated that he would be permitted to rent the premises for the sale of lawn mowers, and attached a copy of an opinion by the corporation counsel that the nonconforming use of the premises was no longer in force because it had been abandoned or discontinued. Record item 6. The opinion, which was dated May 27, 1986 (Record item 7), cited Section 35-11.8 of the Hartford Municipal Code which governs the discontinuance or abandonment of nonconforming uses and provides that:
 Any nonconforming use of land, building or structure which has ceased by voluntary discontinuance for a period of six (6) months shall thereafter conform to the provisions of this chapter, and any nonconforming use of land, building or structure which has ceased by voluntary abandonment for a period of six (6) months shall thereafter conform to the provisions of this chapter.
The corporation counsel's opinion relied in part on a memorandum dated March 22, 1985, (Supplemental record item 1) from a city councilman to the city manager which expressed the concerns of area residents about the plaintiff's use of the building for business purposes and stated that the store had been vacant for three or four years. She noted that "[t]he long term vacancy appears to be a voluntary discontinuance, and the commencement of use by the labor union is a voluntary abandonment of the nonconformity, within the meaning of Section 35-11.8."
Although the plaintiff continued to seek tenants for the property, it remained vacant from July of 1987 to November of 1988. Record item 19, pp. 20-21. However, on February 9, 1988, he filed an application on behalf of a prospective tenant for a variance to allow a "neighborhood grocery store". Supplemental record item 6.
The findings and recommendations of the city plan commission to the board (Supplemental record 7) concerning the variance noted that the building had been vacant for several years and that the use of the property as a grocery store was not in accord with the plan of development. On March 17, 1988, CT Page 6220 the board denied the request because hardship had not been demonstrated. Supplemental record item 11.
On November 1, 1988, the plaintiff rented the premises for use as an aluminum siding business office (Record item 19, p. 15). On December 16, 1988, he was served by the zoning administrator with an order to cease and desist that use on the grounds that he was in violation of a zoning board of appeals decision and that he was operating an office without a zoning permit. Supplemental record item 13.
On January 10, 1989, he filed an appeal from the zoning administrator's order on the grounds that "[t]he premises have been dedicated to a continuous nonconforming use as a retail/business establishment for 50 years [and that the] current use is among those considered interchangeable with past nonconforming uses under Section 35-11.3 of the Municipal Code." Record item 1. On February 7, 1989 the plaintiff's appeal was heard and the board by unanimous vote upheld the decision of the zoning administrator on the ground that "the nonconforming status of the property was lost and residential use may be made of the property." Record item 20.
The plaintiff argues that there is "nothing whatsoever in this record to indicate any intention on the part of the plaintiff to give up his nonconforming use [and that] the uncontroverted evidence of the plaintiff in the record indicates that he made every effort to preserve his nonconforming use." Plaintiff's brief, p. 5. His claim of law is that the temporary interruption or suspension of a nonconforming use without "such a definite and substantial departure from previously existing uses as to signify [their] abandonment . . . does not terminate the right to resume them." Lehmaier v. Wadsworth,122 Conn. 571, 576.
In applying the law to the facts of a particular case, a zoning board of appeals "is endowed with a liberal discretion" and its action is subject to judicial review only to determine whether it was unreasonable, arbitrary or illegal. Toffolon v. Zoning Board of Appeals, 155 Conn. 558, 560. The burden of proof to demonstrate that the board acted improperly is upon the party seeking to overturn the board's decision and the court must review the record "to determine whether there is factual support for the board's decision, not for the contentions of the applicant." Pleasant View Farms Development, Inc. v. Zoning Board of Appeals, 218 Conn. 265, 269-70.
"A nonconforming use is merely an `existing use' the continuance of which is authorized by the zoning regulations." Melody v. Zoning Board of Appeals, 158 Conn. 516, at 519. Where CT Page 6221 an ordinance permits the liberal interchange or substitution of nonconforming uses its express provisions must be followed in order to determine whether a particular use may be considered to be the continuation of an existing nonconforming use. See Point O'Woods Association, Inc. v. Zoning Board of Appeals,178 Conn. 364, 369-70.
The strict rule that a nonconforming use must be continuous is required in order to promote "the indisputable goal of zoning" to reduce nonconforming uses as speedily as possible. Blum v. Lisbon Leasing Corporation, 173 Conn. 175, 181. Moreover, the use must be actual and the property must be so utilized as to be `irrevocably committed' to that use. Lebanon v. Woods, 153 Conn. 182, 197.
The determination of whether a nonconforming use has been abandoned is a question of fact which implies a voluntary and intentional renunciation, but the intent to abandon may nevertheless be inferred from the circumstances. Cummings v. Tripp, 204 Conn. 67, 93. Because the conclusion as to the intention of the landowner is an inference of fact it is not reviewable unless it was one which the trier could not reasonable make. Id.
The intention to abandon or relinquish a known right must be accompanied by some act or omission to act which manifests that intention. Glotzer v. Keyes, 125 Conn. 227, 233. "While mere nonuser and lapse of time alone are not enough to constitute abandonment, they are competent evidence of an intent to abandon, and as such may be entitled to great weight when considered with other circumstances, such as failure by acts or otherwise to assert any claim to the right alleged to have been abandoned, or may be presumed from long continued neglect." Id.
The corporation counsel's opinion of May 27, 1986 (Record item 7) that the plaintiff's nonconforming use had been abandoned was not based merely on what the plaintiff claims is the groundless assumption that the store had been vacant for three or four years. Her conclusion that there had been a voluntary abandonment was based on the fact that the first lease entered into by the plaintiff after Zito vacated the premises was with the social club which constituted an illegal use under the express provisions of the zoning regulations.
At the hearing before the board, counsel for the plaintiff, in response to a question by the chairperson as to whether his client had lost his nonconforming use when he leased the premises to the social club, stated (Record item 19, p. 32) that "I think if we'd kept them six months we could CT Page 6222 have, because that would be voluntary certainly . . . if it had gone on for six months we wouldn't be taking advantage of a nonconforming use, and I would agree with you." The plaintiff's argument in effect is that the substitution of an illegal use by the voluntary act of the owner in and of itself has no effect on the continuity of the nonconforming use that it replaces.
Where the continuation of use is interrupted by the voluntary act of the user, the right to continue it as a nonconforming use is ended even though the zoning ordinance makes no specific provision with respect to abandonment or discontinuance of use. Anderson, American Law of Zoning, Sec. 6.65, citing Darien v. Webb, 115 Conn. 581. In the Darien case, the court held that the substitution of a conforming residential use terminated the right of the owner to resume the prior nonconforming business use because it constituted "a definite and substantial departure" from that use rather than a "continuance" of it. Id. 586.
The evidence before the board showed that the uses of the premises by the social club and the labor union, among others, were not interchangeable uses, and that the plaintiff repeatedly rented or attempted to rent the premises to other tenants without first determining or at least making some inquiry as to whether the proposed use was permissible under the zoning regulations. Similar acts or omissions and departures from the existing use of the property have been held sufficient to justify a finding of abandonment. See Attorney General v. Johnson, 355 S.W.2d 305 (Ky. 1962).
As a general rule, a nonconforming use that exists at the time a zoning ordinance is enacted cannot be changed into a significantly different kind of nonconforming use unless the zoning regulations provide otherwise. Raymond v. Zoning Board of Appeals, 164 Conn. 85, 89. Moreover, even in a case where the record reasonably permits the board to find in favor of the appellant on the issue of abandonment, the board acts illegally and in abuse of its discretion where it allows the substitution of one nonconforming use for another unless it is expressly allowed by the zoning ordinance. Ribon v. Zoning Board of Appeals, 1 Conn. L. Rptr. 416, 419 (1990).
For the foregoing reasons, the court concludes that the record amply supports the board's finding that the plaintiff had abandoned any claimed nonconformity. See Hoagland v. Zoning Board of Appeals, 1 Conn. App. 285, 290.
Accordingly, the appeal is dismissed. CT Page 6223
HAMMER, J.