EUGENE L. GARBATY ET AL. *v.* THE NORWALK JEWISH CENTER, INC.

BALDWIN, C. J., KING, MURPHY, MELLITZ and SHEA, Js.

Argued March 7—decided May 4, 1961

*George F. Lowman,* with whom, on the brief, were *Francis J. McNamara, Jr.,* and *George G. Vest,* for the appellant (named plaintiff).

*Robert A. Slavitt* and *Leonard S. Hermann,* with whom, on the brief, was *Abraham D. Slavitt,* for the appellee (defendant).

KING, J. This action was originally instituted by some fourteen owners of property in the Shorehaven area of Norwalk. The complaint was in two counts, the first claiming that the use being made by the defendant of its property was a common-law nuisance, and the second claiming that it was a violation of the Norwalk zoning ordinances. The complaint was apparently framed in the light of cases such as *Jack* v. *Torrant,* 136 Conn. 414, 416, 71 A.2d 705. Prohibitory injunctive relief was sought. A claim for damages was also included but was not pressed. After a trial in the Superior Court, a regulatory injunction was issued under the first count and the issues were found for the defendant under the second count. The named plaintiff, alone, has appealed, and his assignments of error are directed solely to the issues involved in the second count. In other words, the sole question before this court is whether the plaintiff sustained his burden of proving that the defendant is using its property, in whole or in part, in violation of the zoning ordinances of Norwalk. The plaintiff makes two principal claims. The first is that the former Brush residence, now known as the main building, cannot legally be used other than as a one-family detached dwelling. The second is that the uses which the defendant is making of its property are otherwise in violation of the zoning regulations.

The defendant purchased the property, which then was and still is in an AAA residence zone, on December 30, 1957, from the Brush estate. The property comprises one tract of a little less than three acres on the southerly side of Shorehaven Road, adjoining the plaintiff's property, and another tract of about eight acres on the northerly side of Shorehaven Road, opposite the first tract.

The main building on the southerly tract had been solely and continuously used as a residence by Mrs. Brush for over ten years immediately prior to the defendant's purchase of the property. The defendant made alterations in this building to convert it for use as a community center and is now so using it. There is no question that it is not being used as a residence of any kind.

Section II of the zoning regulations was enacted in 1929, but no AAA or AA residence zones were listed in that section, or created, until an amendment in 1946 added them to the original list of zones. Norwalk Zoning Regs. § 2 (1929 as amended). Section II, as so amended in 1946, provides for a total of twelve zones, of which the first six are residence zones. The section at all times has provided that "[n]o building or premises shall be used, and no building shall be erected or altered, except in conformity with the regulations herein prescribed for the zone in which such buildings or premises is [sic] located." The highest residence zone is the AAA zone, in which what is now the defendant's property was placed in June, 1956.

Section III of the regulations enumerates permitted uses in residence zones. Material portions, in effect both before and after 1946, are quoted in the footnote.[1] An amendment of § III in 1946 added two paragraphs, covering permitted uses in the

---

[1] "Section III. — USE REGULATIONS CONTROLLING RESIDENCE ZONES

In a residence zone, no building or premises shall be used and no building shall be erected or altered which is arranged, intended or designed to be used except for one or more of the following uses:

1. Dwellings.

2. Schools, public libraries, public museums, churches and church buildings.

3. Clubs and social and recreational buildings except those in which the chief activity is a service carried on as a business.

4. Philanthropic or eleemosynary uses or institutions other than

new AAA and AA residence zones.[2] It will be noted that these paragraphs followed the language already used with respect to A and B residence zones as distinguished from that used with respect to C and D residence zones.

Section III, both prior and subsequent to the 1946 amendment, listed eight numbered types of uses which alone were permitted in residence zones of any class. Following this enumeration were special provisions as to dwellings; these applied, respectively, to particular residential zones. In other words, from the general limitation on permitted uses in all residence zones were carved out certain special limitations as to dwelling houses. *Antinozzi v. D. V. Frione & Co.*, 137 Conn. 577, 579, 79 A.2d 598, involved a strikingly similar problem of statutory construction in connection with an over-all Statute of Limitations for actions sounding in tort and a shorter one for actions sounding in negligence. The special limitations in the regula-

correctional institutions or asylums for the insane.

5. Parks and playgrounds.

6. Farming, truck gardening, nurseries or greenhouses.

7. Boat-houses, landings and docks when not conducted as a business.

8. Accessory uses customarily incident to the above uses, the term 'accessory use' however, not including a business or any building or use not located on the same lot with the building to which it is accessory. . . .

In an 'A' or 'B' residence zone, no dwelling shall be erected, altered or used except as a one-family detached house.

In a 'C' residence zone, no dwelling shall be erected, altered or used for the housing of more than two families.

In a 'D' residence zone, no dwelling shall be erected, altered or used for the housing of more families than the quotient obtained by dividing its lot area in square feet by 625."

[2] "[Section III] In 'AAA' Residence Zones no dwelling shall be erected, altered or used except as a one-family detached house.

In 'AA' Residence Zones no dwelling shall be erected, altered or used except as a one-family detached house."

tions in the instant case are of two kinds. One kind was made applicable to A and B residence zones and, after the 1946 amendment, to AAA and AA residence zones. It provided that "no dwelling shall be erected, altered or used except as a one-family detached house." The other kind was made applicable to C and D residence zones. It provided that "no dwelling shall be erected, altered or used for the housing of more" than a prescribed number of families, the limitation on the number varying somewhat in C and D residence zones.

The plaintiff points to the difference in the wording employed in stating the restrictions applicable to dwellings in AAA, AA, A and B residence zones from that employed in stating the restrictions applicable to dwellings in C and D residence zones. He claims that the obvious meaning of the provision applicable to AAA, AA, A and B residence zones is that any dwelling, whether newly built or already existing, can be erected or altered, as the case may be, and can be used, only as a one-family detached house. He concedes that the fair meaning of the provision applicable to C and D residence zones is that if a dwelling is to be built, altered or used "for housing," it must be limited to use by not more than a designated number of families, but that if it is not used for housing, it may be altered or used for any "one or more" of the uses enumerated in § III.

The regulations in question are basically legislative enactments, and in their construction the question is as to the expressed intent. *Park Regional Corporation* v. *Town Plan & Zoning Commission,* 144 Conn. 677, 682, 136 A.2d 785. This expressed intent is the intent of these regulations construed as a whole. *McAdams* v. *Barbieri,* 143

Conn. 405, 418, 123 A.2d 182. "Legislative intent . . . is not to be found in an isolated sentence. The enactment must be examined in its entirety and its parts reconciled and made operative so far as possible." Ibid.

In § III, the special restrictions applicable to the six residential zones are obviously concerned solely with housing. This is particularly emphasized by the use of the word "dwelling" as distinguished, for instance, from the words "residence" or "house." The special restrictions are not concerned with any of the seven general groups of uses which are, in addition to the use for dwellings, permitted in a residence zone under § III. It is true that the phrase "for the housing of" is used in the special restrictions applicable to zones C and D, while no similar phrase occurs in the corresponding restriction applicable to zones AAA, AA, A and B. This slight difference in wording, however, cannot be given the controlling significance which the plaintiff seeks to attach to it. It is far more likely that the words "for the housing of" were employed because of their convenience in phrasing the type of restriction made applicable in zones C and D than that they were employed because it was intended, by the use of different phrasing in the two types of special limitations, to restrict, in the higher residence zones, the alteration or use of a dwelling for any of the seven enumerated uses permitted in a residence zone besides the use for dwellings. It would have been clearer if the words "for housing," or some similar phrase, had been inserted after the word "used" in the special restriction applicable to zones AAA, AA, A and B. But the reasonable meaning of the special restriction applicable to those zones is that it applies only to a building

erected, altered or used for housing. When, as was the case here, the building, although originally erected and used for housing, ceases to be used for housing, the restriction requiring a one-family detached dwelling falls, and the building may be altered and used for any one or more of the seven other general purposes permitted in § III.

It remains to consider whether the court was correct in deciding that the premises, including the former Brush residence, were being used for "one or more" of the permitted uses enumerated in subsections 2, 3 and 4 of § III. A short resume of the more significant uses being made of the property, as found by the court, is required. No changes in the subordinate facts which will benefit the plaintiff can be made.

The defendant is a Connecticut corporation. It is nonprofit, without capital stock, and organized for charitable, religious, social and educational purposes. The Brush residence, the main building, received extensive interior alterations, including the removal of some partitions, the closing off of several bathrooms no longer needed, and the installation of lockers in the basement, before it was put to use as a community center building. The lockers are a portion of some 600 installed on the premises, the rest of them being in a building near the swimming pool. The pool, unchanged in size, is now also used as part of the community project. Sand has been added to the beach area to provide facilities for beach activities. The premises are used in the summer by the defendant's members and their guests for swimming and water-front activities. Temple Shalom, a reform Jewish congregation, conducts regular religious services in the main building and celebrates weddings there. The

rabbi has an office in that building. Societies connected with the temple, among them its men's and women's clubs, meet there. Other organizations affiliated with the defendant, including the Jewish War Veterans and B'nai B'rith, meet in small meeting rooms in the main building. In another building, called the youth center building, interdenominational Boy Scout and Girl Scout troops gather. Some nonaffiliated organizations such as the Red Cross blood bank and the cerebral palsy association are allowed to use the facilities. The defendant conducts social activities, including dances, women's club meetings, and luncheons, on the premises. While at some dances and functions persons are permitted to bring their own alcoholic liquor, none is sold on the premises. The chief activities taking place in the social and recreational portions of the premises are not services carried on as a business.

The burden of proof was of course on the plaintiff, and the court concluded, in effect, that while no portion of the premises is used solely for any particular one of the uses enumerated in § III of the regulations, no portion is used for any purpose other than one or more of the purposes enumerated in subdivisions 2, 3 and 4 of § III. This conclusion is supported by the subordinate facts and is correct.

There is no error.

In this opinion the other judges concurred.