ALEXANDER CISLO ET AL. *v.* CITY OF SHELTON ET AL.

APPELLATE SESSION OF THE SUPERIOR COURT

FILE NO. 518

Argued June 28—decided October 6, 1978

*John H. Welch,* for the appellant (defendant George F. Regan).

*Donald T. Massey,* for the appellees (plaintiffs).

ARTHUR H. HEALEY, J. The two plaintiffs, who were police officers of the defendant city of Shelton[1] (hereinafter Shelton), brought this action against Francis X. Kelley (hereinafter Kelley) as the chief executive officer of Shelton and against George F. Regan (hereinafter Regan) as chief of the police department of Shelton. This action arose out of the dismissal of the plaintiffs from the Shelton police department. In their complaint, they seek a writ of mandamus ordering the defendants "to obey and implement the decision of the Public Employees Appeals Board [hereinafter PEAB] by reinstating the Plaintiffs . . . to their positions as police offi-cers in the City of Shelton Police Department." The trial court ordered that a writ in the nature of man-

---

[1] In its memorandum of decision the trial court ordered that the city of Shelton be dropped as a party defendant.

damus issue requiring the defendants Kelley and Regan to obey the decision of the PEAB. The defendants have appealed from that judgment.[2]

The finding discloses the following facts: The defendant Kelley was the duly elected chief executive officer of Shelton and the defendant Regan was the duly appointed chief of police of Shelton. Prior to December 19, 1975, both plaintiffs were employed as police officers in the police department of Shelton. On December 19, 1975, the plaintiffs were dismissed from the police department by the defendant Regan for making contributions to a political party in violation of § 9.4[3] of the Shelton city charter, and in violation of article 13[4] of the Shelton city ordinance entitled, "Personnel Rules and Merit Systems." Later that same day the plaintiffs began the first step of the grievance procedure provided under a collective bargaining agreement[5] then in effect between Shelton and Teamsters Local Union No. 145 by filing labor grievance number 41 alleging viola-

---

[2] While the appeal was taken by all of the defendants, no one argued the appeal before us on behalf of the defendant Kelley, who, we were told at the time of argument, is no longer the mayor of the city of Shelton.

[3] Section 9.4 of the Shelton charter and article 13 of the Shelton city ordinance entitled "Personnel Rules and Merit Systems" contain identical language:

"No person holding a position in the classified service of the City shall make any contribution to the campaign funds of any political party or candidate for public office or take any part in the management, affairs, or campaign of any political party further than in the exercise of his rights as a citizen, to register as a member of a political party, to express his opinion, and to vote. Violations by any such person of the provisions of this section shall be grounds for his removal."

[4] See footnote 3 supra.

[5] On June 14, 1969, Shelton and Teamsters Local No. 145 entered into a collective bargaining agreement which was revised as of July 1, 1972. The grievance procedures of that agreement are still in effect. Grievances filed pursuant to the procedures set forth in the collective bargaining agreement have been processed and heard by the state board of arbitration and mediation during the year 1975.

tion of the union contract. The grievance procedures which are set out in that collective bargaining agreement are still in effect. On December 27, 1975, Regan instituted the second step of the grievance procedure by denying the grievance filed by the plaintiffs. Thereafter, the only remaining step of the grievance procedure under the collective bargaining agreement was the referral of the grievance to the Connecticut board of arbitration and mediation. On January 6, 1976, the plaintiffs withdrew labor grievance number 41.

The plaintiffs then filed an appeal with the PEAB, which was established by § 5.3.3[6] of the Shelton city charter. Pursuant to § 5.3.3, the decision of the PEAB is final unless within ten days of the receipt of the decision the mayor shall submit a different decision in writing to the PEAB, in which event the decision of the mayor shall be final unless within ten days the PEAB shall reaffirm its original decision in writing after the affirmative vote of at least four of its members. On January 7, 1976, the PEAB heard the appeal of the plaintiffs from their dismissal, and, at its meeting on that date, it voted to order the reinstatement of the plaintiffs. On Jan-

---

[6] Section 5.3.3 of the Shelton city charter (1975 Rev.), entitled "Public Employees Appeals Board," provides:

"The City shall have a Public Employees Appeals Board consisting of five (5) members, appointed by the Board of Aldermen to serve for staggered terms of five (5) years. The term of one (1) member shall expire each year of a five (5) year cycle. Subject to the provisions of any applicable collective bargaining agreement, the Board shall hear, within ten (10) days of filing, the appeal of any employee of the City, who has completed any probationary period of employment, and who may have a grievance involving his employment or the merit system. The Board shall submit its decision in writing to the Mayor, and the decision of the Board shall be final unless within ten (10) days of receipt of the decision the Mayor shall submit a different decision in writing to the Board, in which event the decision of the Mayor shall be final unless within ten (10) days the Board shall reaffirm its original decision in writing after the affirmative vote of at least four (4) members."

uary 19, 1976, Kelley, as mayor of Shelton, was officially notified of the PEAB's decision and, within ten days of this notification, he issued a decision different from that rendered by the PEAB. On January 30, 1976, the PEAB voted to reaffirm its original decision to reinstate the plaintiffs to their positions as members of the Shelton police department. On January 31, 1976, Kelley was notified of the PEAB's reaffirmation of its decision. On or about February 1, 1976, the plaintiffs requested that the PEAB's decision be effectuated immediately and that they be reinstated. Kelley and Regan refused to implement the PEAB's decision. The plaintiffs followed all of the required procedural steps in a timely fashion.

In their assignment of errors the defendants attack the trial court's conclusions as not supported by the facts found.[7] The conclusions of the court are to be tested by the findings and not by the evidence. *Weingarten* v. *Allstate Ins. Co.*, 169 Conn. 502, 504. "A conclusion must stand unless it is legally or logically inconsistent with the facts found or unless it involves the application of some erroneous rule of law." *Hutensky* v. *Avon*, 163 Conn. 433, 437.

At oral argument and in their brief, the defendants set forth three arguments in support of their

[7] The sole assignment of error alleges that the court erred "[i]n reaching the conclusions stated in paragraph 23 of the Finding when the facts set forth in the Finding do not support it." The paragraph actually numbered 23 in the finding and which is included under the section finding facts recites: "All of the required procedural step [sic] by the plaintiffs were followed." We do not treat that paragraph as a waiver by the defendants of their claim that the court erred in concluding both that the plaintiffs had exhausted their administrative remedies by appealing their dismissals to the public employees appeals board of Shelton and that the court had jurisdiction over the subject matter of the action. As the parties did in their briefs and in argument before us we treat as the conclusions attacked by the defendants those paragraphs numbered 1 and 2 under "the following conclusions are reached."

position: (1) The trial court had no jurisdiction over the subject matter of the action; (2) § 5.3.3 of the Shelton city charter, providing for the creation of the PEAB, is invalid because it is in conflict with the General Statutes; and (3) the trial court abused its discretion in granting the writ of mandamus that the plaintiffs requested.

## I

The defendants' claim that the court had no jurisdiction over the subject matter of this action must be disposed of no matter when it was raised. *Carten* v. *Carten,* 153 Conn. 603, 610. Unlike jurisdiction over the person, subject matter jurisdiction cannot be waived or acquired by consent. *State* v. *Jones,* 166 Conn. 620, 627–28. The defendants argue that although the question of political activity cannot enter into the negotiations leading to the collective bargaining agreement, once the agreement is reached the question of what is subject to arbitration is for the arbitrators to decide under the "broad and all-embracing language of the [c]ontract." They maintain that the controversy in question was an arbitrable matter under the contract, that the grievance procedures set out therein had to be followed, and that because they were not, the plaintiffs have not exhausted their administrative remedies. Therefore, they claim that the court had no subject matter jurisdiction. They argue that because the agreement contains no exclusions from arbitrability, the broad language of the arbitration clause indicates that all controversies are therefore arbitrable.

The plaintiffs claim that the controversy bringing about their dismissal was not a "grievance" as defined in the contract and that state law prohibits any municipal charter provisions concerning political activity by municipal employees from being the subject of collective bargaining, which law, they

claim, the contracting parties must be presumed to have had in mind. The plaintiffs go on to assert that inasmuch as the political activity prohibition was not properly a part of the collective bargaining agreement, any alleged violations of it could not constitute a breach of the agreement. Consequently, they conclude that their subsequent attempts to vindicate their legal rights did not have to be pursued through the grievance procedure described in that agreement.

Under certain portions of chapter 113 of the General Statutes, collective bargaining between a municipality and its employees is provided for. General Statutes §§ 7-467–7-479. Section 7-474 (f) provides in part: "Where there is a conflict between any agreement reached by a municipal employer and an employee organization and approved in accordance with the provisions of sections 7-467 to 7-477, inclusive, *on matters appropriate to collective bargaining, as defined in said sections,* and any charter, special act, ordinance, rules or regulations adopted by the municipal employer or its agents such as a personnel board or civil service commission . . . the terms of such agreement shall prevail . . . ." (Emphasis added.) Section 7-474 (g) provides, in part, that "any provision of any municipal charter *concerning political activity of municipal employees shall not be subject to collective bargaining."* (Emphasis added.) It is apparent that the legislature, in utilizing the language that it did, clearly indicated that certain matters are not appropriate to collective bargaining, and specifically intended that municipal charter provisions concerning political activity "shall not" be subject to collective bargaining. The intent is clear and is found not in what the legislature meant to say, but in the meaning of what it did say. See *Colli* v. *Real Estate Commission,* 169 Conn. 445, 452. These statutes were in effect at all times relevant to this case and the par-

ties are presumed to have had them in mind. Statutes existing at the time a contract is made become a part of it and must be read into it just as if an express provision to that effect were inserted therein, except where the contract discloses a contrary intention. *Ciarleglio* v. *Benedict & Co.*, 127 Conn. 291, 293; see 17 Am. Jur. 2d, Contracts § 257. Many years ago the United States Supreme Court said: "It is also settled that the laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as if they were expressly referred to or incorporated in its terms. This principle embraces alike those which affect its validity, construction, discharge, and enforcement." *Von Hoffman* v. *City of Quincy*, 71 U.S. (4 Wall.) 535, 550.

Section 9.4 of the Shelton city charter prohibits political activity, an activity which cannot be the subject of collective bargaining under the enabling statutes that permit collective bargaining agreements between a municipality and its employees. Therefore, the plaintiffs' dismissal for alleged political activity in violation of the charter cannot be construed as a grievance that was required to be subjected to binding arbitration as provided for in the collective bargaining agreement. This case cannot be said to come within the rule that specific designation of arbitrable matters is unnecessary where the language of the arbitration clause indicates an intention of the parties to include all controversies which may arise under the principal agreement between them. *A. Sangivanni & Sons* v. *F. M. Floryan & Co.*, 158 Conn. 467, 473. The law is a silent factor in every contract; *Gibralter Factors Corporation* v. *Slapo*, 23 N.J. 459, 465, appeal dismissed, 355 U.S. 13; and by statute, municipal charter provisions concerning political activity shall not be subject to collective bargaining. General Statutes § 7-474 (g).

There is no question that, in general, an individual employee wishing to resort to the courts must have attempted to resort to and have exhausted, as far as is possible, the grievance procedures established by the collective bargaining agreement, including arbitration where the agreement so provides. 51A C.J.S., Labor Relations § 413. See *Vaca* v. *Sipes*, 386 U.S. 171, 184; *McNish* v. *American Brass Co.*, 139 Conn. 44, 53. This case, we have seen, does not fall within the general rule. Accordingly, the plaintiffs were not bound to pursue their claims under the grievance procedure portion of the collective bargaining agreement as the defendants maintain. The court did not err in concluding that it had jurisdiction over the subject matter of the action.

## II

We now turn to a claim which the defendants neither assigned as error nor made as a claim of law below, as disclosed by their draft finding. While we are not bound to consider it,[8] we will do so to dispose fully of this appeal. That claim is that § 5.3.3 of the Shelton city charter entitled "Public Employees Appeals Board" is "irreconcilably inconsistent" with the general statutes and is, therefore, invalid. We do not agree.

General Statutes § 7-422 allows, but does not require, any town, city or borough to create a personnel appeals board as set out in that statute. General Statutes § 7-193 (b) provides in part that "[e]very town, city or borough shall have such

---

[8] Section 652 of the 1963 Practice Book; see Practice Book, 1978, § 3063; which was applicable to the Appellate Session of the Superior Court under § 587 of the 1963 Practice Book; see 1978 Practice Book § 1064; provided: "This court shall not be bound to consider any errors on an appeal unless they are specifically assigned or claimed and unless it appears on the record that the question was distinctly raised at the trial and was ruled upon and decided by the court adversely to the appellant's claim, or that it arose subsequent to the trial."

other . . . boards, commissions and agencies as are provided by the general statutes or by the charter." Section 5.3.3 of the Shelton city charter expressly provides for a public employees appeals board. The city of Shelton was expressly authorized by statute to set up this appeal board, and it properly did so under the rule that a municipality can exercise only such power as the state grants it. Moreover, the courts must search for statutory authority for the enactment rather than searching for a statutory prohibition against it; *Avonside, Inc.* v. *Zoning & Planning Commission,* 153 Conn. 232, 236; and the statute authorized the establishment of the PEAB in Shelton.

Section 5.3.3 of the charter is also consistent with the statutes in that the appeals board created by it could also have been created pursuant to § 7-194 (58) of the General Statutes. Section 7-194 of chapter 99 of the General Statutes provides in part that "all towns, cities or boroughs which have a charter or which adopt or amend a charter under the provisions of this chapter shall have the following specific powers in addition to all powers granted . . . under the constitution and general statutes . . . ." Subsection 58 of that statute provides for authority "to establish a merit system or civil service system for the selection and promotion of public officials and employees. . . ." Although it does not expressly grant the power to establish a personnel appeals board, there is a proper basis for doing so because that statute, and particularly that subsection, confers the implied power to do so. " 'The powers expressly granted to a municipal corporation carry with them such other powers as are necessarily implied in or incident to such grants, and it also possesses all powers which are indispensable to the attainment and maintenance of its declared objects and purposes.' " *Bridgeman* v. *Derby,* 104 Conn. 1,

5, quoting *Crofut* v. *Danbury,* 65 Conn. 294, 300; see 56 Am. Jur. 2d, Municipal Corporations § 194. The city of Shelton, being a creature of the state, can exercise only the powers expressly conferred upon it and those which are fairly to be implied as necessary to carry into effect the powers expressly given. *Old Colony Gardens, Inc.* v. *Stamford,* 147 Conn. 60, 62; *Waterbury* v. *Macken,* 100 Conn. 407, 411. It is indeed proper to imply the authority to establish the personnel appeals board from the expressly granted power to establish a merit system or civil service system. To do so is in harmony and is consistent with the power delegated to the municipality by the state. See *Bredice* v. *Norwalk,* 152 Conn. 287, 292.

## III

The defendants' final claim is that the court abused its discretion in granting the writ of mandamus. This also is a claim that was neither assigned as error nor made as a claim of law below according to the draft finding, but it was discussed in oral argument and the briefs. In our view, however, it is to be discussed by us because the trial court did so. In arguing this branch of the case the defendants maintain that when the defendant Regan, as chief of police, removed the plaintiffs he was acting in accordance with § 6.9.2.2[9] of the city charter. That section provides in part: "The Chief of Police, subject to the approval of the Mayor, shall appoint and may remove all officers and employees of the Police Department . . . ." They argue that

[9] Section 6.9.2.2 of the Shelton city charter, entitled "The Chief of Police," provides:

"The Mayor shall appoint and may remove a Chief of Police. The Chief of Police shall be the chief executive officer of the Department. The Chief of Police, subject to the approval of the Mayor, shall appoint and may remove all officers and employees of the Police Department, including a Dog Warden, and such other personnel as may be necessary or convenient to the operation of the Department."

the charter thus gives the chief of police "the absolute and discretionary right to remove any officer or employee whether for cause or not." They go on to argue that even though the PEAB considered the charges against the defendants minimal, nevertheless the PEAB's conclusion is inconsistent with its findings, and finally, that the PEAB had no authority to order the reinstatement of the plaintiffs. To accept the defendants' argument with respect to § 6.9.2.2 would clearly make § 5.3.3 meaningless as to police officers and employees of the police department. The charter must receive a reasonable construction; *Hutchinson* v. *Board of Zoning Appeals,* 140 Conn. 381, 385; and must be examined in its entirety. Its parts must be reconciled and made operative so far as is possible. *Garbaty* v. *Norwalk Jewish Center, Inc.,* 148 Conn. 376, 382. Section 5.3.3, after providing that it is "[s]ubject to the provisions of any applicable collective bargaining agreement," permits hearing "the appeal of *any* employee of the City." (Emphasis added.) The intent was thus to cover *any* city employee. This is confirmed by § 8.2 of the charter, which excludes certain municipal employees from the classified service system and, hence, from the merit system over which the PEAB has jurisdiction. Section 8.2 does not exclude permanent members of the police department. Furthermore, the conduct for which these plaintiffs were dismissed was, as we have pointed out, not the subject of the existing collective bargaining agreement. Holding that the language of § 5.3.3 prevails over the defendants' argument involving § 6.9.2.2 comports with the tenet that where one construction leads to public mischief (here the unbridled discretion of the chief of police and of the mayor in removing employees of the police department) which another interpretation avoids, the latter is to be favored unless the terms of the law absolutely forbid. *McAdams* v. *Barbieri,* 143

Conn. 405, 425. Therefore, § 5.3.3 controls over § 6.9.2.2. Section 5.3.3 provides that the reaffirmance by the PEAB of its original decision "shall be final." It was final here and the defendants were required to accept it as such.

The defendants' claim that the trial court abused its discretion in granting a writ of mandamus requires an examination of the nature of that remedy. " 'The writ of mandamus is designed to enforce a plain positive duty, upon the relation of one who has a clear legal right to have it performed, and where there is no other adequate legal remedy.' " *State ex rel. Golembeske* v. *White,* 168 Conn. 278, 282, quoting *State* v. *New Haven & Northampton Co.,* 45 Conn. 331, 343. It is available, however, only to one who has a complete and immediate right to enforce the discharge of a duty by a public official or public agency. *VanBuskirk* v. *Knierim,* 169 Conn. 382, 387–88. "It is elementary that, while mandamus is available to compel the performance of a purely ministerial act, it will not lie to direct the performance of an act involving the exercise of judgment or discretion." *Hannifan* v. *Sachs,* 150 Conn. 162, 167; see *Raslavsky* v. *Moore,* 167 Conn. 363, 367; 55 C.J.S., Mandamus § 53. Although mandamus is an ancient common-law writ, its issuance is governed largely by equitable considerations. *Gormley* v. *Panuzio,* 166 Conn. 1, 2; see *State ex rel. Shelton* v. *Edwards,* 109 Conn. 249, 254–55. Mandamus, although a legal remedy, is not awarded as a matter of right but is within the sound discretion of the court. *Sullivan* v. *Morgan,* 155 Conn. 630, 635. "In mandamus, the factual situation existing at the time the writ is to issue governs." *Gormley* v. *Panuzio,* supra, 2; see *State ex rel. Board of Education* v. *D'Aulisa,* 133 Conn. 414, 424.

The plaintiffs have a clear legal right against the defendants Kelley and Regan to have the final deci-

sion of the PEAB implemented. This decision of the PEAB was final and binding and its implementation by the defendants Kelley and Regan was purely ministerial, involving no discretion on their part. The writ of mandamus gave the plaintiffs no right they did not already have. *Boyko* v. *Weiss,* 147 Conn. 183, 186. The existence of any other relief which will preclude resort to mandamus must not only be adequate, but it must be specific, which means that it must be adapted to secure the desired result effectively, conveniently, completely and directly upon the very subject matter involved. *State ex rel. Eastern Color Printing Co.* v. *Jenks,* 150 Conn. 444, 451. Here, there was no such other relief available, although the defendants suggest in their brief that there was. They do not, however, state what that relief in fact was. Certainly, if they suggest that pursuing the grievance procedure route to the state board of mediation and arbitration is "such other relief," that contention is without merit. This is so because, as we have seen, conduct involving political activity is not subject to collective bargaining and there is no jurisdiction in that board to pass upon the controversy in this case. The court did not abuse its discretion in issuing the writ.

Since the conclusion we have reached is adequate for the disposition of this appeal, we shall not consider the question, never raised by the parties, of whether the plaintiffs had the right to appeal their dismissals to the PEAB despite the existence of the collective bargaining agreement, which provides a grievance procedure with ultimate resort to arbitration at the request of the local union or the employer, but not of the employee. Section 5.3.3 of the Shelton city charter authorizes appeals by any employee of the city '[s]ubject to the provisions of any applicable collective bargaining agreement." As previously mentioned, § 7-474(f) of the General Statutes also

provides that the terms of a collective bargaining agreement shall prevail over any municipal charter provision upon matters appropriate for collective bargaining. Whether the collective bargaining agreement in this case impliedly precludes resort to the PEAB with respect to grievances which would also be subject to arbitration is an issue upon which it would be inappropriate to express an opinion at this time. This result is reached in view of the absence of the union, which is the bargaining representative, and of others who may have an interest in the agreement as parties as well as the failure of either party to raise the issue and the lack of any necessity for its present determination.

There is no error.

In this opinion PARSKEY and D. SHEA, Js., concurred.