[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff Jennifer DiMarco owns and resides at real property known as 41 King Street, Norwalk, Connecticut. The defendants Kevin Poruban and Debra Poruban own and reside at real property known as 43 King Street. The properties, located in an A Residence zoning district, abut. The issue in these appeals is the storage or parking of certain vehicles by the defendants on their property, in particular a half-ton capacity Ford pickup truck and a partially assembled military weapons carrier vehicle.
In an earlier appeal taken by the present defendants from a decision of the Norwalk Zoning Board of Appeals, Poruban, et al.v. Zoning Board of Appeals of the City of Norwalk, et al., CV 94-0142265 S, the trial court (Dean, J.) upheld the Zoning Board's decision that the defendants' storage of yet another vehicle, a military troop transport carrier, on their property constituted the storage of a commercial vehicle in a residential zone of a type and capacity which was in violation of the zoning regulations of the City of Norwalk. It appears that the decision CT Page 9458 has not been appealed and the troop transport carrier has been removed from the property.
In the first of these present appeals, No. CV 95 0144762 S, the Zoning Board upheld the decision of the Norwalk Zoning Enforcement Officer that storage of the Ford pickup truck and the military weapons carrier vehicle did not violate Section 118-330 of the zoning regulations which prohibits the storage of more than one commercial vehicle on residential lots. The Zoning Enforcement Officer also determined that the presence and storage of the partially assembled military vehicle on the defendants' property did not violate the Zoning Regulations.
On or about January 3, 1995, DiMarco appealed the Zoning Enforcement Officer's decision to the Zoning Board pursuant to Section 8-6 of the Connecticut General statutes.
In her appeal to the Zoning Board, DiMarco claimed that the storage of the partially assembled military vehicle in addition to the other vehicles parked at the defendants' property:
 (1) violated Sections 118-1210(B), 118-1220(C)(1) and 118-1220(C)(5) of the zoning regulations because the defendants did not have adequate available parking required for residential use as well as for an existing day care facility use;
 (2) violated setback requirements of the City of Norwalk because it, as well as other vehicles, was parked within a required front yard setback area of the subject property;
 (3) violated Section 118-330(B)(4)(e) of the zoning regulations because the storage of the partially assembled military vehicle and a pickup truck with a combination registration plate, constituted the storage of more than one commercial vehicle in a residential zoning district; and,
 (4) violated Section 118-330(A) of the zoning regulations because it was not consistent with the character of the Subject Property's neighborhood.
On March 16, 1995, the Zoning Board held a public hearing concerning DiMarco's claims and voted to deny her appeal, CT Page 9459 upholding the Zoning Enforcement Officer's decision. DiMarco appealed that denial to this court.
Although the plaintiff had raised the issue of whether or not the vehicles on the defendants' property were improperly parked or stored within a setback area, that issue was left undecided by the Zoning Board. Instead, the Zoning Board directed the Zoning Enforcement Officer to determine whether the front yard of the Poruban's property was located on King Street or on William Street and whether the parking or storage of several vehicles on that property in the area the defendants had allocated for parking violated the parking and setback provisions of the Zoning Regulations.
The second of the present appeals, No. CV 95-0148238 S, involves the Zoning Enforcement Officer's determination that the front of the defendants' property was located on William Street, rather than on King Street as alleged by the plaintiff, and that the storage of vehicles did not violate the Zoning Regulations. The plaintiff DiMarco appealed the Zoning Enforcement Officer's decision to the Zoning Board pursuant to § 8-6 of the Connecticut General Statutes, raising the same issues addressed in the first appeal.
On September 7, 1995, the Zoning Board voted to deny DiMarco's appeal and uphold the Zoning Enforcement Officer by a vote of 3-2. In this appeal to the court, DiMarco requests that this court sustain her position and hold that the subject property's front setback is located on King Street and that the storage of vehicles and the location of any required parking spaces within the front setback violates the zoning Regulations as a matter of law.
Because the issues in these appeals overlapped, the parties have agreed to consolidate the appeals. The issues in the consolidated appeal, then, are the plaintiff's claims that the defendants use of their property:
 (1) violates Section 118-330(B)(4)(e) of the zoning regulations because the storage of a partially assembled military vehicle and a pickup truck with a combination plate, constitutes the storage of more than one commercial vehicle in a residential zoning district;
CT Page 9460
 (2) violates Sections 118-1210(B), 118-1220(C) 1) and 118-1220(C)(5) of the zoning regulations because the defendants do not have adequate available parking for a residential use as well as an existing day care facility which should be characterized as a home occupational use;
 (3) violates setback requirements of the City of Norwalk because the partially assembled military vehicle, as well as other vehicles, is parked within a required front setback area of the subject property; and,
 (4) violates Section 118-330(A) of the zoning regulations because the storage of the disputed vehicles together with the parking of other vehicles is not consistent with the character of the subject property's neighborhood.
AGGRIEVEMENT:
Section 8-8 (b) of the Connecticut General Statutes provides that any person aggrieved by a decision of a municipal land use board may appeal to superior court. Section 8-8 (a)(1) provides that an ". . . `aggrieved person' includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board." DiMarco owns real property that abuts the subject property. Therefore, by definition, DiMarco is aggrieved by the actions of the Zoning Board of Appeals.
Scope of Review
The function of the trial court in an appeal from a decision of a zoning board of appeals is to determine if the board's action was arbitrary, illegal or an abuse of discretion. Schwartzv. Planning Zoning Commission, 208 Conn. 146, 152,543 A.2d 1339 (1988); Pike v. Zoning Board of Appeals, 31 Conn. App. 270,624 A.2d 909 (1993).
"A trial court may not substitute its judgment for that of the administrative tribunal. Frito-Lay, Inc. v. Planning Zoning Commission, 206 Conn. 554, 572-73, 538 A.2d 1039 (1988). [A] zoning board of appeals . . . is endowed with a liberal discretion, and its [actions are] subject to review by the courts only to determine whether [they were] unreasonable, arbitrary or CT Page 9461 illegal. . . . The burden of proof to demonstrate that the board acted improperly is upon the party seeking to overturn the board's decision. . . . In an appeal from the decision of a zoning board, [the courts] therefore review the record to determine whether there is factual support for the board's decision, not the contentions of the applicant. (Citations omitted; internal quotation marks omitted.) Pleasant View FarmsDevelopment, Inc. v. Zoning Board of Appeals, 218 Conn. 265,269-70, 588 A.2d 1372 (1991); see also Frito-Lay, Inc. v. Planning Zoning Commission, supra, 206 Conn. at 573. [I]t is not the function of the court to retry the case. Conclusions reached by the commission must be upheld by the trial court if they are reasonably supported by the record. The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the agency. The question is not whether the trial court would have reached the same conclusion but whether the record before the agency supports the decision reached. Primerica v. Planning Zoning Commission, 211 Conn. 85,96, 558 A.2d 646 (1989). Generally, the court is limited to the evidence contained in the return of record. General Statutes Sec. 8-8 (k). When a zoning authority has stated the reasons for its actions, a reviewing court may determine only if the reasons given are supported by the record and are pertinent to the decision. (Internal quotation marks omitted.) Horn v. ZoningBoard of Appeals, 18 Conn. App. 674, 676, 559 A.2d 1174 (1989)."Zeigler v. Town of Thomaston, 43 Conn. Sup. 373, 376-77,654 A.2d 392.(1995).
"General Statutes Sec. 8-6 provides that the zoning board of appeals shall, inter alia, hear and decide appeals where it is alleged that there is an error in any order made by a zoning enforcement officer. The board is entrusted with the function of interpreting and applying its own zoning regulations. Baron v.Planning Zoning Commission, 22 Conn. App. 255, 257, 576 A.2d 589
(1990). When deciding an appeal from a decision of the board, the trial court must determine whether the board has correctly interpreted its regulations and applied them with reasonable discretion to the facts. Pascale v. Board of Zoning Appeals,150 Conn. 113, 117, 186 A.2d 377 (1962); Baron v. Planning ZoningCommission, supra. The burden is on the plaintiffs to demonstrate that the board has acted improperly in making its decision. Adolphson v. Zoning Board of Appeals, 205 Conn. 703,707, 535 A.2d 799 (1988). A decision of the board will be reversed only when the plaintiff has proven that the decision was unreasonable, arbitrary or illegal. Schwartz v. Planning ZoningCT Page 9462Commission, 208 Conn. 146, 152, 543 A.2d 1339 (1988). A local board or commission is in the most advantageous position to interpret its own regulations and apply them to the situations before it. Therefore, as long as honest judgment has been reasonably and fairly exercised at the local level, the trial court must not substitute its judgment for that of the zoning board. Baron v. Planning Zoning Commission, supra, 257; Molicv. Zoning Board of Appeals, 18 Conn. App. 159, 164, 556 A.2d 1049
(1989)." New London v. Zoning Bd. of Appeals, 29 Conn. App. 402,405-06, 615 A.2d 1054 (1992).
 A.
The plaintiff contends that the Porubans' storage of the partially assembled military vehicle and the pickup truck on their property constitutes the storage of more than one commercial motor vehicle on a residentially zoned property in violation of the Zoning Regulations.
Section 118-330(B)(4)(e) of the zoning regulations permits in a residential zone: "storage of not more than one (1) commercial vehicle, as defined in Chapter 246, Section 14-1 of the Connecticut General Statutes, which does not exceed one-ton rated capacity."
General Statutes § 14-1 Definitions. (a) Terms used in thischapter, defines a commercial motor vehicle as follows:
 (11) "Commercial motor vehicle" means a vehicle designed or used to transport passengers or property, except a vehicle used within one hundred fifty miles of a farm in connection with the operation of such farm, fire fighting apparatus or other authorized emergency vehicles, or a recreational vehicle in private use, which (A) has a gross vehicle weight rating of twenty-six thousand and one pounds or more; (B) is designed to transport sixteen or more passengers, including the driver, or is designed to transport more than ten passengers, including the driver, and is used to transport students under the age of twenty-one years to and from school; or (C) is transporting hazardous materials and is required to be placarded in accordance with the Code of Federal Regulations Title 49, Part 172, Subpart F, as amended; . . .
Evidence at the hearing demonstrated that the Ford pickup CT Page 9463 truck has a vehicle weight of slightly less than 4,000 pounds and a one-half load rating, i.e., 1,000 pounds. The army vehicle specification shows a gross vehicle weight of 5,240 pounds with a half-ton load capacity. Additionally, the evidence indicated the Ford was a typical pickup truck having the facility to sit two or three passengers. The army vehicle specifications indicated it was designed for a crew of two.
The plaintiff argued that Section 118-330(B)(4)(e) of the zoning regulations substituted one ton rated capacity for the twenty-six thousand and one pounds (or thirteen tons gross vehicle weight) requirement of Section 14-1(a)(11)(A) of the General Statutes. The plaintiff urged the conclusion that if one stores two motor vehicles designed to transport property, where each vehicle exceeds a one ton gross vehicle weight, then such storage violates the Zoning Regulations.
In the alternative, the plaintiff argues that General Statutes § 14-1(a)(11) defines commercial vehicle as ". . . a vehicle designed or used to transport passenger or property. . . ." Because the combination plated pickup truck is designed to transport property it is commercial by definition. The partially assembled military vehicle is defined in the "Standard Military Motor Vehicles" Guide, submitted by the Porubans to the Zoning Board of Appeals, as "Truck, Weapons Carrier, 1/2-Ton, 4 x 4." Then, clearly the military vehicle, by its own definition, is designed to transport property (weapons). The plaintiff urged the conclusion that the zoning regulations permits only one such commercial vehicle which does not exceed one-ton rated capacity. The Record indicated that the pickup has one-half ton capacity and the weapons carrier has a one-half ton capacity. Therefore, the plaintiff contends that one of Porubans' commercial vehicles, the pickup or weapons carrier, must be removed from the property, as required by the zoning regulations as a matter of law.
The defendants argued that the point of departure in determining whether storing these vehicles on their property violated Section 118-330(B)(4)(e) was for the Zoning Board of Appeals to consider whether under General Statutes § 14-1 these were commercial vehicles. Only then and only if the Zoning Board first decided these vehicles were commercial should the inquiry address the "one ton rated capacity" requirement.
General Statutes § 14-1(a)(11), omitting the exclusionary CT Page 9464 and non-relevant portions, defines a commercial motor vehicle as "a vehicle designed or used to transport passengers or property, . . . which (A) has a gross vehicle weight rating of twenty-six thousand and one pounds or more; (B) is designed to transport sixteen or more passengers. . . ."
This court agrees with the interpretation of the statute urged by the defendants and accepted by the Board that, under the relevant portions of the statute, a commercial motor vehicle must be designed or used to transport passengers or property and must have either a gross vehicle weight rating of twenty-six thousand and one pound or more or must be designed to transport sixteen or more passengers. It is obvious that passenger vehicles are designed and used to transport passengers and might transport property, but would not qualify as commercial vehicles under this definition. A pickup truck is designed to transport property and might transport passengers, but unless it meets the weight or passenger volume of this definition, it is not a commercial vehicle under the statute.
The pickup truck in this instance has a combination registration which is defined in General Statutes § 14-1(a)(9) as "the type of registration issued to a motor vehicle for both private passenger and commercial purposes if such vehicle does not have a gross vehicle weight in excess of ten thousand pounds." On the other hand, General Statutes § 14-1(a)(12) defines Commercial registration as "the type of registration required for any motor vehicle designed or used to transport merchandise, freight or persons in connection with any business enterprise, unless a more specific type of registration is authorized and issued by the commissioner for such class of vehicle." Thus, the mere fact that the pickup truck has a combination registration does not necessarily make it a commercial vehicle requiring commercial registration.
The evidence before the Board indicated that the pickup was used for personal transportation by Mr. Poruban; there was no evidence to indicate that it was used for the transportation of merchandise or freight in connection with any business enterprise.
The evidence before the Board indicated that the army vehicle when ready for use by Mr. Poruban will be used infrequently, usually as part of Memorial Day parades or Veterans' Day parades in Norwalk and Stamford. CT Page 9465
This court cannot say that the Zoning Board of Appeals determination that these vehicles were not commercial vehicles "as defined in Chapter 246, Section 14-1 of the Connecticut General Statutes" was arbitrary, illegal or an abuse of discretion.
This court also agrees that the plaintiff is misreading the regulations in her assertion that the one ton capacity limitation on commercial vehicles replaces the 13-ton weight requirement of the statute. The regulation refers to C.G.S. § 14-1 for the definition of a commercial vehicle which definition states that the gross vehicle rate must exceed 26,001 pounds. If a vehicle meets the statutory definition of a commercial vehicle, one then looks to the rated capacity — the payload or carrying capacity — — to determine if such commercial vehicle should be excluded from the privilege of storage in the residential zone. If it is a commercial vehicle that has a load capacity greater than one ton, it may not be stored on the lot. If it is a commercial vehicle that has a load capacity of less than one ton, then it might be stored on residential property, but only one such vehicle might be so stored on any lot.
The regulation obviously was not intended to exclude every vehicle, designed or used to transport passengers or property, which exceed one-ton in gross weight. As the defendants have noted, such an assumption — that a vehicle weighing 2,000 pounds is commercial — would lead to an untenable result. The defendants, at the hearing, presented the specifications for Hummers as well as a typical family vehicle — a Chevrolet Suburban. The Suburban has a gross vehicle rate of 7,200 pounds. Under the plaintiff's strained reading of the regulations, a Suburban, or any of the other popular utility vehicles, any vehicle with a gross weight of more than 2,000 pounds, would be considered commercial and possibly excluded from storage in a residential zone. This is contrary to the clear meaning of the regulation.
The record shows that the members of the Board did not accept the Plaintiffs argument that the statute was modified by the regulation to deem as commercial a vehicle weighing more than one ton. The Zoning Board of Appeals obviously concluded the load capacity as an additional requirement if a vehicle were first found to be commercial. CT Page 9466
Again, this court cannot find such a conclusion was arbitrary, illegal or an abuse of discretion.
 B.
The plaintiff contends there is a violation of ther setback requirements of the City of Norwalk because the partially assembled military vehicle, as well as other vehicles, is parked within a required front setback area of the subject property
The defendants' property is a lot with roads on two sides of the property: King Street and William Street. The front door of the house faces easterly towards a lot apparently owned by the City of Norwalk. The back of the residence faces westerly towards the DiMarco property. The garage is on the northerly side of the residence facing King Street. William Street is on the southerly side of the lot.
It appears that the lot was originally a corner lot at the intersection of King Street and William Street. In 1961, in order to lessen the sharpness of the King Street curve into William Street and make the turn more gradual, the location of King Street at the intersection was moved easterly, creating a "D" shaped parcel between the easterly side of the defendants' property and the current intersection of King and William Streets.
This newly created parcel designated as "Tax Lot 52" between the Poruban property and King Street altered the zoning designation of the Poruban property to a "through lot" or "interior lot facing two streets" according to the Zoning Enforcement Officer and the Zoning Board of Appeals, although such lot designations do not appear to be defined in the regulations. Since 1961 the Poruban property has abutted King Street only on the north and William Street only on the south.
It was disclosed from the record that the defendants have created five parking spaces on their property. Two spaces are located within the attached garage. Three spaces are located on an apron off the driveway leading from King Street to the garage. The partially restored military vehicle is usually stored in one of those apron spaces and the other spaces are also used for the parking of various vehicles. When these spaces are utilized, the vehicles in them are located less than forty feet back from the lot line abutting King Street. CT Page 9467
The zoning regulations mandate a forty (40) foot front yard setback for A Residence zoned real properties. (Schedule of Residential Uses). Moreover, the regulations require that:
 All off-street parking and loading facilities shall be located to the rear of the required front set back line as now or hereafter established. The area between the street line and the front setback line, except for vehicle and pedestrian accessways, shall be landscaped with lawns or other appropriate plantings. (Zoning Regulation § 118-1220 J.)
The Zoning Board directed the Zoning Enforcement Officer to determine whether the Poruban lot fronted on King Street or William Street and to determine if the vehicles stored or parked in the exterior parking spaces violated the Regulations. This was done because the regulations defined a "corner lot" ( A parcel of land at the junction of and fronting on two (2) or more intersecting streets or upon two (2) parts of the same street forming an interior angle of one hundred and twenty degrees (120°) or less) and an "interior lot" (A lot other than a corner lot) and fixed the front yard for such definitions (An open, unoccupied space on the same lot with a building, situated between the street wall of the building and the street line of the lot), but there was no definition of a lot running between two streets such as the subject lot.
If the King Street yard were found to be the front yard, then the vehicle parking apron would be within the forty foot setback line. On the other hand, if William Street were considered the front yard for setback purposes, the vehicle parking apron would not be located within the forty foot front yard setback nor within the twenty foot setback from King Street considered as a rear yard area.
The zoning Enforcement Officer determined that the front door of the Poruban house faces Tax Lot 52 to the east, so the front of the house does not face either King Street or William Street. The sides of the house face King Street and William Street, while the rear of the house faces the DiMarco residence. The Zoning Enforcement Officer and the Zoning Board of Appeals confronted with interpreting the regulations to determine the front yard, and concluding that the Poruban property cannot have two front yards, elected to utilize the provision of the CT Page 9468 Regulations which addressed the determination of what would be the front yard on for a corner lot.
Zoning Regulations § 118-900. Front yards in residence zones. provides:
 A. A building erected on a corner lot shall be required to comply with the setback line on only its narrow street front. Where the two street frontages of a corner lot are of the same length the owner may elect which street is to govern the setback line.
Since the frontage on William Street was the narrower street course, the Zoning Enforcement Officer recommended the front yard setback be determined from William Street rather than King Street. The Zoning Board adopted this recommendation.
The plaintiff claims the Zoning Board should have denied the Zoning Enforcement Officer's decision that the location of the front setback for the property is on William Street. The plaintiff claims that the plain language of the regulations does not support that finding. It was outside of the Zoning Board of Appeals' authority to read a provision into the zoning regulations which is clearly not included. The plaintiff asserts that, in fact, logic and common sense dictate that the front setback of the Poruban property, identified as 43 King Street, is on King Street.
The plaintiff maintains that the record is full of uncontroverted evidence which shows that the subject property "fronts" on King Street. The address of the property is 43 King Street. The Porubans receive mail at 43 King Street. The City Office designates the subject property to be on King Street. Moreover, the lot is surrounded entirely by a stone wall. The only break in that wall is on King Street. The Poruban's driveway is located at the break in the stone wall which fronts on King Street. The Poruban's only entrance to and exit from the property is, therefore, on King Street.
The plaintiff asserts that the Zoning Board of Appeals exceeded its discretion. It was outside of the Zoning Board of Appeals's authority to read a provision into the zoning regulations which is clearly not included. It then interpreted and applied a provision in the zoning regulations which does not exist and it ignored the uncontroverted evidence presented to the CT Page 9469 contrary. The plaintiff asserts that the General Assembly has not empowered the Zoning Board of Appeals to amend the zoning regulations on a case-by-case application; only the Zoning Commission is authorized to amend the zoning regulations pursuant to Section 8-3 of the Connecticut General statutes. The Zoning Board of Appeals' finding is in excess of its statutory authority and at variance with the evidence before it.
The defendants respond that reliance on address, mail and the stone wall are not germane indicia under zoning. Nothing in the regulations establish the criteria sought by the plaintiff to establish frontage.
Moreover, the Porubans offered photographs of several properties in Norwalk with access off of streets other than the front yards of those properties, i.e., properties where there is no relationship between property address or street access and the determination of frontage. While the plaintiff argues for common sense, common sense would be cast aside if a Zoning Board of Appeals were to make a zoning decision based on non-zoning issues without any basis in the regulations. A Zoning Board of Appeals cannot make a decision based on where one's mailbox or dwelling is without basis in the Regulations. That, the defendants assert, would be zoning by whim.
The defendants claim that a holding by the Zoning Board of Appeals that King Street was the front yard would have been wholly unsupported by any reasons or zoning evidence in the record and would have been arbitrary. Essentially, rather than flip a coin or pick King Street without any basis to do so, the Zoning Board of Appeals interpreted and applied its regulations to this question which needed resolution.
There cannot be two front yards as the plaintiff seems to assert. There is absolutely no support for this theory in the regulations for interior lots or for any lots for that matter as even corner lots when fronting on two streets do not have two (2) front yards but are subject to the "narrow street rule" to determine frontage. By applying the "narrow street analysis," the measurement calculations resulted in William Street being the narrower street and hence the front yard.
While this court finds that the plaintiff's argument is cogent, the same may also be said for the position adopted by the Zoning Board of Appeals in determining which yard of the Poruban CT Page 9470 property should be considered the front yard for setback purposes. It was the obligation of the Zoning Board of Appeals to make a determination.
When there is ambiguity in a zoning ordinance, "its meaning and scope may be found by examining the language in the light of other provisions in the ordinance, by ascertaining the object sought to be accomplished, and by considering all other relevant circumstances. Garbaty v. Norwalk Jewish Center, Inc., 148 Conn. 376,381, 171 A.2d 197; Wilson v. Miller, 144 Conn. 212, 214,128 A.2d 894; Gilbert v. Hamden, 135 Conn. 630, 635, 68 A.2d 157;Darien v. Webb, 115 Conn. 581, 585, 162 A. 690." Pascale v. Boardof Zoning Appeals, 150 Conn. 113, 117, 186 A.2d 377 (1962).
The record indicated that the Board gave due deliberation to the argument of the plaintiff and to the research and recommendations of the Zoning Enforcement Officer.
"[T]he zoning regulations, as well as 8-6 of the General Statutes, entrust to the board the function of deciding, within prescribed limits and consistent with the exercise of legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. The trial court had to decide whether the board correctly interpreted the section and applied it with reasonable discretion to the facts. Pascale v. Board of Zoning Appeals,150 Conn. 113, 116, 117, 186 A.2d 377; Stern v. Board of ZoningAppeals, 140 Conn. 241, 244, 99 A.2d 130. In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal. Connecticut Sand Stone Corporation v. Zoning Boardof Appeals, 150 Conn. 439, 442, 190 A.2d 594."Toffolon v. Zoning Board of Appeals, 155 Conn. 558, 560-61,236 A.2d 96 (1967).
On review of the record, this court cannot conclude that the Board's decision in fixing the front yard was unreasonable, arbitrary or illegal.
 C.
The plaintiff asserts that the storage of the partially assembled military vehicle on the defendants' property violates the zoning Regulations because there is not adequate available CT Page 9471 parking for both residential and home occupation uses.
The record indicates and the parties to this appeal agree that there are five spaces available for parking on the Poruban property: two spaces in the attached garage and three spaces on the apron adjacent to the driveway. The record also indicates that the defendants are licensed by the State of Connecticut to operate a "family day care home" on the premises. At the time of the first appeal in these matters, the defendants, in addition to a private passenger vehicle, were parking or storing the military troop transport vehicle which was found to be an unauthorized commercial vehicle for parking or storing in a Residence A zone, the partially assembled weapons carrier, and the Ford pickup truck in the three of the five spaces.
The plaintiff contended that § 118-1220(C)(1) of the zoning regulations requires that a single-family residence must have a minimum of two parking spaces for off-street motor vehicle parking. Section 118-1220(C)(5) requires that if a home occupation exists at the residence, there must be two parking spaces, and the two spaces required for a residence.
Furthermore, the plaintiff noted that Section 118-1210(B) of the zoning regulations provides that "[p]arking and loading spaces shall not be used for any other purpose or character of automobile parking or loading as to limit their availability for automobile parking or loading."
The plaintiff argues, therefore, that the express and unambiguous language of the zoning regulations require that a single-family residence at which there is a home occupation must have at least four available parking spaces. The regulations further mandate that the parking spaces cannot be obstructed. The spaces must be available for both the residential use (two spaces) and the home occupation use (two spaces). When the military troop transport carrier and partially assembled military weapons carrier vehicle were both stored in two of the allotted spaces, the plaintiff contended that, with the defendants' passenger car and pick-up truck occupying two of the remaining spaces, there was only one space allotted to the home occupation use and the storage of the vehicles did not comply with the requirement that the spaces not be used for any other purpose or character as to limit their availability for automobile parking or loading. CT Page 9472
Part of this contention may now be moot, because in the previous appeal, it was determined that troop transport carrier was a type of vehicle which could not be stored or parked in the A residence zone. Presumptively, that vehicle has been removed.
Nevertheless, the defendants argue and the Board agreed that § 118-330(B) of the Norwalk zoning regulations permit certain uses in an A residence Zone as of right as primary or accessory uses and certain other uses by way of special permit. The single family use is a permitted use as of right (§ 118-330(B)(1)(a)) and the accessory uses of family day care homes and group day care homes are also permitted uses as of right (§ 118-330(B)(4)(h)).
Section 118-330(B)(4) reads:
 (4) Accessory uses and structures, Accessory uses and structures which are incidental to and customarily associated with the principal use of the premises shall be permitted, subject to the provisions of § 118-910, and subject to the following restrictions.
Subsection (h) reads:
 (h) Family day-care homes in single-family and two-family dwellings and group day-care homes in single-family dwellings, subject to the condition that a state license or registration is obtained by the provider and the outdoor play areas shall be fenced and/or adequately screened from adjacent properties to the satisfaction of the Zoning inspector.
The defendants and the Board also concur that "home occupations" are separately authorized accessory uses under § 118-330(B)(4)(a) with conditions listed in subsections [1] through [5].
The defendants and the Board also note that a nursery schools and child day-care centers are special permit uses in an A residence Zone separately authorized under § 118-330(B)(2)(q).
The Norwalk zoning regulations define "Family Day-care Home" as "a private family home caring for not more than six (6) CT Page 9473 children, including the provider's own children not in school full-time and which is registered with the State of Connecticut."
The record indicates that the defendants are licensed to operate a "family day care home" by the State of Connecticut.
The Norwalk zoning regulations define "Child Day-care Center" as "a facility which offers a program of supplementary care to more than twelve (12) related or unrelated children on a regular basis and which is licensed by the State of Connecticut."
There is no definition of what is meant by "home occupations."
Section 118-1220 C(1) requires a minimum of two off-street parking spaces for a single family residence; § 118-1220 C(5) requires two parking space in addition to the residential requirement of 2 spaces; § 118-1220 C(22)(a) requires five parking spaces plus an additional space for every two employees for a child day-care center.
There is no specific parking requirement listed for a "family day-care home."
The Zoning Board rejected the plaintiff's argument that the family day-care home operated by the defendants was a home occupation requiring the additional two spaces. The record and the parking regulations demonstrate that the zoning commission only applied an additional parking requirement to home occupations and nursery or child day care centers, but not to a family day-care home. Each use is separately defined in the Regulations. As the defendants note, if the planning and zoning commission desired additional parking for the family day care use it could have so provided. The Planning and Zoning Commission, as the legislative body, saw the family day care use as distinct from the other uses.
The Zoning Enforcement Officer, in a report, noted that the Regulations were amended on June 12, 1987 to allow family day care as an accessory use in residential zones without listing an additional parking requirement, while the same amendment established the parking requirement for a child day care center use.
It is not unreasonable for the Board to consider a family CT Page 9474 day-care home a unique use, separately listed as a use and unrelated to the uses contemplated by the provisions for home occupations.
The Board also appears to have adopted the Zoning Enforcement Officer's opinion that § 118-1210(B) sets forth the amount of parking space that must be provided, not the amount that must be left open or unoccupied. The storage of the military vehicle in one of the spaces is not necessarily contrary to the Regulations. Indeed, the Regulations allow for storage of recreational and commercial vehicles (§§ 118-330(4)(d) and (e)). The spaces are being used for the parking or storage of motor vehicles. As the defendants note, there is no limitation in the Regulations as to the number of spaces that must be open at any given time, only available on site. To adopt the rationale proposed by the plaintiff, one must have the required parking but cannot use it.
The court cannot say that the Board's decision that no additional parking is required because the defendants operate a family day-care home in their residence, and that the day-care operation is not a home occupation for parking purposes, and that the use by the defendants of residential parking space to park or store motor vehicles is not a violation of § 118-1210(B) is unreasonable or arbitrary, illegal or an abuse of discretion. Moreover, the issue appears at the present time to be moot, since there are five spaces available, although one is used to store the military weapons carrier.
 D.
The argument by the plaintiff that the storage of the partially assembled military weapons carrier is not in harmony with the A Residence Zone District must also fail. The plaintiff has submitted photographs to the Board and to this court which led members of the Board to characterize the vehicle storage situation on the defendants' property as "ugly as sin" and as "an atrocity." The court's examination of the photos certainly indicate a situation that is aesthetically a mess. However, the storage or parking of that vehicle on the lot is a permitted use and presumptively in harmony with the district.
"The designation of a particular use of property as a permitted use establishes a conclusive presumption that such use does not adversely affect the district and precludes further CT Page 9475 inquiry into its effect on traffic, municipal services, property values, or the general harmony of the district." TICDevelopment, Inc. v. Planning Zoning Commission, 215 Conn. 527,532, 577 A.2d 288 (1990), quoting, Beit Havurah v. Zoning Boardof Appeals, 177 Conn. 440, 443, 418 A.2d 82 (1979).
For the reasons indicated, the court does not find the Zoning Board of Appeals actions were arbitrary, illegal or an abuse of discretion. Therefore, the appeal in each case is dismissed.
NIGRO, J.