[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Steph Robby, LLC, appeals from the decision of the defendant, the Waterbury Planning and Zoning Commission (hereinafter the Commission). The Commission denied Steph Robby's application for a license to continue a nonconforming use on property located at 120 Falls Avenue, (Oakville) Watertown, Connecticut (hereinafter the Property).
On June 16, 1997, Steph Robby requested by letter to the Zoning Enforcement Officer, Mary T. Greene, approval for the continuation of the nonconforming industrial and/or commercial use of property located at 120 Falls Avenue in Watertown, Connecticut. (Return of Record [ROR], Exh. A). Steph Robby contended that the nonconforming use had not been abandoned by the prior owners. (Return of Record [ROR], Exh. A). Steph Robby purchased the Property in April, 1997 from the Small Business Administration. (ROR, Exh. C, 4). The Small Business Administration obtained the Property through foreclosure in October, 1994 from the previous owner, Robert Donofrio (hereinafter Donofrio) (ROR, Exh. C, 4).
The Property consists of approximately 4± acres and is improved with a 7,500± S.F. industrial building. (ROR Exh. B, 1). The Property had been used since 1955 for an electroplating operation. (ROR, Exh. A). The Property was located in an I-G 80 industrial zone until December 1993 when it was re-zoned as an R-12.5 residential zone. (Supplemental ROR, Revised Exh. H.)
Steph Robby's request was referred to the Commission. The Commission heard the issue on July 9, 1997, August 6, 1997, August 20, 1997, September 3, 1997, October 1, 1997, October 15, 1997, November 5, 1997 and November 12, 1997. (Supplemental ROR, Exh. E). After hearing extensive testimony from Steph Robby and its attorney, Donofrio and individuals from the neighborhood surrounding the Property, the Commission voted on November 12, 1997 and decided that the nonconforming use had been abandoned and therefore the Property could be used only for residential purposes. (ROR, Exh. E, 6).
Steph Robby now appeals from the Commission's decision. CT Page 6205
Connecticut General Statutes § 8-8 governs appeals taken from the decisions of a municipal planning and zoning commission to the superior court. "A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created." Bridgeport Bowl-O-Rama v.Zoning Board of Appeals, 195 Conn. 276, 283, 487 A.2d 559 (1985)
[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a Steph Robby's appeal." Jolly. Inc. v. Zoning Board of Appeals,237 Conn. 184, 192, 676 A.2d 831 (1996). The Steph Robby alleges that it owns real property located at 120 Falls Avenue, Oakville [Watertown], Connecticut. (Complaint, ¶ 1). An owner of subject property is aggrieved and entitled to bring an appeal.Winchester Woods Associates v. Planning Zoning Commission,219 Conn. 303, 308, 592 A.2d 953 (1991). In addition, the record contains a copy of a deed by which the Property was transferred to the Steph Robby from the Small Business Administration. (Complaint ¶ 8; ROR, Plaintiff's Exh. 2).
Accordingly, the court determines that the Steph Robby is aggrieved.
General Statutes § 808(b) provides, in pertinent part, that an "appeal shall be commenced by service of process in accordance with subsections (e) and (f) of this section within fifteen days from the date that notice of the decision was published as required by the general statutes."
Subsection (e) further provides that service "shall be directed to a proper officer and shall be made by leaving a true and attested copy of the process with, or at the usual place of abode of the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality." General Statutes § 8-8 (e).
The record contains a copy of the actual notice published in the newspaper which is dated November 14, 1997 (ROR, Exh. F). This appeal was commenced on November 25, 1997 by service of process on the Town Clerk of Watertown, upon Mary T. Greene, the Planning and Zoning Officer of Watertown, and upon Judith M. Wick, a Chairperson of the Watertown Planning and Zoning Commission. (Sheriff's Return). CT Page 6206
The court finds that this appeal was commenced in a timely fashion by service of process upon the proper parties.
"In appeals from administrative zoning decisions . . . the decisions will be invalidated even if they were reasonably supported by the record, if they were not supported by "substantial evidence in that record. . . . The `substantial evidence' standard requires enough evidence to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. . . ." Kaufman v. Zoning Commission, 232 Conn. 122, 151,653 A.2d 798 (1995) "Courts are not to substitute their judgment for that of the board. . . ." Bloom v. Zoning Board of Appeals,233 Conn. 198, 206, 658 A.2d 559 (1995). "A zoning board . . . is endowed with a liberal discretion, and its actions are subject to review by the courts only to determine whether they were unreasonable, arbitrary or illegal . . . The burden of proof to demonstrate that the board acted improperly is upon the party seeking to overturn the board's decision. . . . In an appeal . . . the courts therefore review the record to determine whether there is factual support for the board's decision, not the contentions of the applicant. . . ." Pleasant View FarmsDevelopment, Inc. v. Zoning Board of Appeals, 218 Conn. 265. 269-70, 588 A.2d 1372 (1991). "The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the agency." Primerica v. Planning ZoningCommission, 211 Conn. 85, 96, 558 A.2d 646 (1989)
"Where it appears from the record that the action of a zoning authority rested on more that one ground, the authority's action must be sustained so long as the record supports at least one of the grounds." Hoagland v. Zoning Board of Appeals,1 Conn. App. 285, 290, 471 A.2d 655 (1984). "A court should be cautious about disturbing the decision of a local board where it appears that an honest judgment has been reasonably and fairly exercised." Stern v. Zoning Board ofAppeals, 140 Conn. 241, 245-46, 99 A.2d 130
(1953).
As previously stated, the Commission denied Steph Robby's request for continuation of the prior nonconforming industrial use on the Property and determined that the nonconforming use had been abandoned. Specifically, the Commission found that "the prior non conforming use of the Property was not continued as required by Section 6.6 of the Watertown Zoning Regulations and CT Page 6207 is therefore forfeit due to the non-use for the following reasons: 1. There has been no active business presence at the Property, including no operations since 1994, no business licenses, no equipment installed, and no personal property taxes assessed; 2. For a number of years, the building was in a vacant, deteriorated and abandoned condition with no maintenance, ex. doors hanging off, windows broken, grounds overgrown, no security or locked doors; 3. All equipment and fixtures were removed from the Property in 1994; 4. Utilities serving the Property were disconnected, and utility facilities were removed; 5. The current owner planned a use of the Property for the parking of oil trucks for Brass City Fuel that was distinct and separate from the prior non-conforming manufacturing use. In addition, the current owner began storing a boat and trucks inside the building which activities are inconsistent with the prior non-conforming manufacturing use. 6. The current owner presented insufficient evidence of non-abandonment by the submission of the electric utility statement which only covered the period 12/27/93 to 10/20/94; 7. The current owner presented insufficient evidence of SBA's marketing efforts. The SBA's flyer dated 4/26/95; the current owner failed to establish the period during which the property may have been marketed with a nonconforming use or to present evidence that the SBA representative was involved with the property or that the non-conforming use was recognized by the SBA (SBA letter of 10/17/97 refers to "commercial" use; SBA letter of 10/31/97 refers to "industrial" use); and the PZC further finds that the letter issued by the Planning and Zoning Officer dated 9/21/95 was not issued in consultation with or authorized by the PZC." (ROR, Exh. F)
Steph Robby argues that neither Donofrio nor the Small Business Administration expressed an intent to abandon the nonconforming use of the Property and, therefore, Steph Robby has a vested right in resuming the nonconforming use. In addition, Steph Robby argues that, should the court find that Steph Robby has the right to continue the prior nonconforming use, the court should also find that the nonconforming use is not restricted to the electroplating use engaged in by the prior property owner at the date of the zone change.
"The accepted method of accomplishing the ultimate object is that, while the alien use is permitted to continue until some change is made or contemplated, thereupon, so far as is expedient, advantage is taken of this fact to compel a lessening or suppression of the nonconformity." Darien v. Webb,
CT Page 6208115 Conn. 581, 585, 162 A.2d 690 (1932). "It is a general principle in zoning that nonconforming uses should be abolished or reduced to conformity as quickly as the fair interest of the parties will permit. In no case should they be allowed to increase. . . . While a mere increase in the amount of business done pursuant to a nonconforming use is not an illegal expansion of the original use, a change in the character of a use does constitute an unlawful extension." Bauer v. Waste Management of Connecticut,234 Conn. 221, 236-37, 662 A.2d 1179 (1995)
"Where a nonconformity exists, it is a vested right which adheres to the land itself." Petruzzi v. Zoning Board of Appeals,
supra, 176 Ccnn. 483-84. "In deciding whether the activity in question is within the scope of a nonconforming use, three factors should be considered: (1) the extent to which the current use reflects the nature and purpose of the original use; (2) any differences in the character, nature and kind of use involved; and (3) any substantial differences in the activities conducted on the property." Bauer v. Waste Management of Connecticut,234 Conn. 221, 243, 662 A.2d 1179 (1995). "It is the board, as the trier of fact, which must determine whether a nonconforming use is in existence at the time of the application." Point O'WoodsAss'n., Inc. v. Zoning Board of Appeals, 178 Conn. 365, 368-69,423 A.2d 90 (1979). "As the party claiming the benefit of a nonconforming use, the [plaintiff bears] the burden of proving a valid nonconforming use in order to be entitled to use the property in a manner other than that permitted by the zoning regulations." Cummings v. Tripp, 204 Conn. 67, 82-83,527 A.2d 230 (1987)
The intent of the Watertown Zoning Regulations is to "guide the future growth and development of the Town in accordance with a Plan of Development designed to represent and promote the most beneficial and convement relationships among the residential, commercial, industrial and public areas within the Town. . . ." (ROR, Exh. H, § 1.1). Connecticut General Statutes § 8-2
provides that "such regulations shall not prohibit the continuance of any nonconforming use, building or structure existing at the time of the adoption of such regulations." The Watertown Zoning Regulations provide for nonconforming uses in Article 1 Section 6. The intent in Section 6 is to "permit these non-conformities to continue until they are removed but not to encourage their survival [and] that [they] shall not be enlarged upon, expanded or extended if such a change would increase the non-conformity, nor be used as grounds for adding other CT Page 6209 structures or uses prohibited elsewhere in the same district." (ROR, Exh. H, § 6.1). Section 6.8 is entitled Non-ConformingUses of Structures and Land in Combination and it provides in relevant part: "Where a lawful use of a structure, or of a structure and land in combination exists at the effective date of adoption or amendment of these Regulations which is no longer permitted under the provisions of these Regulations as enacted or amended, such lawful use may be continued so long as it remains otherwise lawful, subject to the following provisions: . . . 6.8.3. A non-conforming use of a building or structure may be changed only to a conforming use. (ROR, Exh. H).
"In Darien v. Webb, 115 Conn. 581, 162 A. 690, [the Supreme Court] held that an ordinance which provided that a previously existing use `may be continued' did not prohibit the reestablishment of such a use once it had been discontinued unless there was a definite intent on the part of the owner to abandon the use evidenced by overt acts or failure to act sufficient to constitute proof of that intent. . . ." Dubitzky v.Liquor Control Commission, 160 Conn. 120, 125-26, 273 A.2d 876
(1970). "Time is not an essential element of abandonment although it is evidential, especially in connection with facts evidencing such intention." Ullman, ex. rel. Eramo v. Payne, 127 Conn. 239,241, 16 A.2d 286 (1940). "A use . . . is not discontinued within the meaning of the ordinance by a mere temporary suspension for a reasonable time, for reasons beyond the owner's control, where there exists a manifested intention on the part of the owner to resume the nonconforming use as soon as a tenant can be obtained." Id., 241-42.
First, the Commission decided that the nonconforming use of the Property was abandoned because "[t] here has been no active business presence at the Property, including no operations since 1994, no business licenses, no equipment installed, and no personal property taxes assessed." (ROR, Exh. F) Steph Robby argues that implicit in the Commission's finding is that the nonconforming manufacturing use had continued until September of 1994 and this fact is not in dispute. Steph Robby argues, therefore, that the fact that the building was vacant from 1994 until April, 1997 cannot support a decision of abandonment of the nonconforming use. (Plaintiff's brief, p. 25). The Commission argues that this reason merely reflects its finding that there was a lack of any active business presence on the Property and that there was cumulative, credible evidence to support this conclusion. (Defendant's brief, pp. 18-19) CT Page 6210
The record reveals the following evidence concerning the lack of business activity on the Property: A letter from the Town Assessor certifying that from 1991 to 1997 the building on the Property was vacant, (ROR, Exh. C, 4); Tax liens for taxes due July 1, 1991 and January 1, 1992 on 120 Falls Avenue, (ROR, Exh. C, 4), and on the Turner Avenue lot dated May 15, 1992, (ROR, Exh. C, 4); Certificates of Foreclosure dated March 28, 1994 and October 3, 1994, (ROR, Exh. C, 4); Handwritten notes indicating that water was turned off and the metered was removed on December 21, 1994, (ROR, Exh. C, 4); Incident report of a fire in the building on the Property on March 7, 1997 in which the property was described as a "vacant industrial building" and that "[m]any of the buildings doors were forced open and most of the windows were broken; a result of vandalism prior to the fire.", (ROR, Exh. D, 9); More than 20 affidavits from neighbors which attest to "[n]o public business conducted on the site for more than three years" before October 1997, (ROR, Exh. D, 9); Affidavits from Eileen Thoma and Karl Thoma attesting that they had never seen any type of business on the property during the twelve and five years, respectively, they have lived in the neighborhood, (ROR, Exh. D, 9); Testimony from Jane Blakeman, Norman Stephen, and Mark O'Brien that no business was seen being conducted on the Property for up to ten years, (ROR, Exh. E, 4, pp. 8-9; Exh. E, 5, p. 2 Exh. E, 4, p. 1); Testimony from Jane Blakeman that she had discussions with three mail persons which indicated that no mail had been delivered to the property for at least seven years. (Supplemental ROR, Exh. E, 7, p. 1).
An issue of fact of whether or not there was business activity on the Property prior to September 1994 is present in the record. It is for the Commission to make this factual determination. Primerica v. Planning Zoning Commission, supra,211 Conn. 96. There was substantial testimonial and documentary evidence in the record that there was no business activity on the property since at least 1994, probably earlier. The Commission's decision is, therefore, substantially supported by the record.
In addition, the Commission determined that the nonconforming use of the Property had been abandoned because "the building was in a vacant, deteriorated and abandoned condition with no maintenance, ex. doors hanging off, windows broken, grounds overgrown, no security or locked doors" for a number of years. (ROR, Exh. F) Steph Robby argues that this is the same as the previous basis for the Commission's decision with the added fact CT Page 6211 that the building has not been maintained. (Plaintiff's brief, p. 25). Steph Robby contends that the Zoning Regulations § 6.4 expressly authorizes the repair of such a condition as exists here.[1] The Commission argues that physical abandonment constitutes evidence of an intent to abandon.
"`Abandonment' is a question of fact which implies a voluntary and intentional renunciation. Nevertheless, the intent to abandon may be inferred as a fact from the circumstances. . . ." Cummings v. Tripp, supra, 204 Conn. 93.
Intent may be evidenced by a failure to act sufficient to support the application of such intent. Grushkin v. Zoning Board ofAppeals, 26 Conn. Sup. 457, 460, 227 A.2d 98 (1967)
The record reveals the following evidence concerning the condition of the Property at the time Steph Robby purchased it: A letter from the Town Assessor certifying that from 1991 to 1997 the building on the property was vacant, (ROR, Exh. C, 4); Steph Robby's letter to the Watertown Zoning Enforcement Officer dated June 16, 1997 in which the property was referred to as an "eyesore for the Town and neighborhood", (ROR, Exh. A, p. 2); Letter from Donofrio dated November 11, 1997 stating the that "With the exception of some cosmetic changes (i.e.: paint, landscaping, regrading, etc.) the building is in basically the same condition it was when [he] left in September 1994." (inspection of property was after repairs were made), (ROR, Exh. B, 8); Numerous affidavits from neighbors that attest that the condition of the Property included "doors hanging off the building, overgrown grounds with abandoned vehicles, the inside was completely stripped of any fixtures necessary to conduct a business, doors left open allowing access to anyone, grounds and building left with no security from either vandalism or elements of the weather.", (ROR, Exh. D, 9); Affidavit from Eileen Thomas of 133 Turner Avenue that attests that the "property was vacant, very overgrown with a number of abandoned vehicles on the property. At that time there was no door on the building. Abandoned is a term that describes this property.", (ROR, Exh. D, 9); Affidavit from Karl Thoma of 133 Turner Avenue that attests to the fact that he had observed the property on several occasions and "found it to be completely deserted, and in a state of disrepair.", (ROR, Exh. D, 9); Incident report from the Fire Chief's Office indicating that on March 7, 1997 a small fire was put out. The incident commander describes the Property as follows: "Many of the buildings doors were forced open and most of the windows were broken; a result of vandalism prior to the CT Page 6212 fire . . . . The interior of the structure was empty. . . .", (ROR, Exh. D, 9); Commissioner Adams stated during the November 5, 1997 meeting that there was no doors or windows and half the roof was missing or in disrepair such that the Property was "clearly abandoned," (Supplemental ROR, Exh. E, 7, p. 13), and at the November 12, 1997 meeting, he stated that he had been in the building about five or six years ago and the doors were off the building and the building was vandalized and let go, (ROR, Exh. E, 6, p. 3); Testimony from Mr. Norman Stephen of 89 Falls Avenue at the August 20, 1997 and October 1, 1997 meetings of the Commission that, at least since 1990, the Property was "left in a state of decay" and the building was overgrown and uninhabitable with its doors hanging open, and only abandoned vehicles were seen on the Property. (ROR, Exh. E, 3, p. 2; Exh. E, 5, p. 1); Testimony from Mr. Harry Slocum of 30 Bussemey Avenue at the August 20, 1997 meeting that "the building was bad . . . an eyesore" and that "he had been living there for ten years and he does not remember anybody in there," (ROR, Exh. E, 3, p. 3); Testimony from Mr. Mark O'Brien that the "building was stripped . . . no equipment, no doors, things were torn down . . . no lights, no light bulbs, the service was disconnected from . . . 1994, so there was no electricity in there," (ROR, Exh. E, 4, p. 1).
There is substantial evidence in the record that the property was not maintained and was vacant at least since sometime in 1994, probably earlier. The members of the Commission, in addressing the issue of intent, questioned why, if there was an intent to continue the nonconforming use, wouldn't the property owner have taken some action to keep the property maintained and the taxes paid and to protect the property from vandalism or the weather. Commissioner Wick emphasized that "If you don't mow the grass and the doors are hanging on the hinges and don't close and there is trash around, then that is an indication that the property has been abandoned because if you are conducting business there, you are not going to have the property in that state and the Commission knows for a fact that the applicant did go in there upon purchasing the property and immediately started cleaning it up. . . ." (ROR, Exh. E, 6, p. 3). Commissioner Skyrme stated that "there is a whole section of the law about abandonment and if one starts going down a list, the building is not maintained, the property is not maintained, the taxes are not maintained — you cannot find anything associated with this parcel that was maintained." (Supplemental ROR, Exh. E, 7, p. 15). Commissioner Skyrme questioned how this could not show CT Page 6213 abandonment. (Supplemental ROR, Exh. E, 7, p. 15). He stated that "The level of care that is given even for the most terrible piece of property, the broken windows boarded up with plywood, somebody who owns a piece of property does a modicum of something to indicate an interest and a plan to do something with that." (Supplemental ROR, Exh. E, 6, p. 12) The record reflects, therefore, that the Commission carefully considered the facts and determined that those facts revealed that the property was physically abandoned.
The Commission also found that "[a]ll the equipment and fixtures were removed from the Property in 1994." (ROR, Exh. F). Steph Robby argues that this fact alone cannot support a conclusion of abandonment. (Plaintiff's brief, p. 25). The Commission argues that removal of personal property can be considered evidence of an intent to abandon. (Defendant's brief, p. 22).
In The New Haven School District and The Church of theBlessed Sacrament v. Zoning Board of Appeals, Superior Court, judicial district of New Haven, Docket No. 376804 (January 3, 1996, Booth, J.), the court found that removal of lockers and educational equipment from the Barry Junior High School constituted evidence of an intent to abandon the nonconforming use of the property. In contrast, the court in Ullman ex. rel.Eramo v. Payne, 127 Conn. 239, 16 A.2d 286 (1940), found an intent not to abandon a nonconforming use from the fact that the owner retained display cases and a sign from a prior tenant and kept them in the store until he found a new tenant who would use the property for the same purpose as the prior tenant. The Commission was correct, therefore, in determining that the removal of all equipment and fixtures from the property was evidence of an intent to abandon.
The Commission also found that "[t]he current owner planned a use of the Property for the parking of oil trucks for Brass City Fuel that was distinct and separate from the prior non-conforming manufacturing use. In addition, the current owner began storing a boat and trucks inside the building which activities are inconsistent with the prior non-conforming manufacturing use." (ROR, Exh. F). Steph Robby argues that there is no support in the record for this statement because it stated that it was claiming only the right to continue or resume the manufacturing use. (Plaintiff's brief, p. 26). The Commission argues that, even though Steph Robby has not verbally declared its intention, its CT Page 6214 actions are evidence of its intent to abandon the nonconforming manufacturing use of the property. (Defendant's brief, pp. 23-24).
The record reveals several indications of Steph Robby's activity of parking oil trucks of Brass City Fuel and of storing a boat and trucks inside the building on the Property. First, a memorandum of the zoning enforcement officer indicates that the Steph Robby purchased the property "with the belief that his oil trucks for Brass City Fuel could be parked at this location." (ROR, Exh. D, 2). Second, Mr. Norman Stephen of 89 Falls Avenue offered testimony at the October 1, 1997 meeting which stated that "the current owner as he can see has oil trucks and the intent is to use it for whatever the oil business is or whatever use he plans for the oil business. . . ." (ROR, Exh. E, 5, p. 2). Third, Mr. Stephen again addressed the Committee at its November 5, 1997 meeting where he stated that "his understanding is that it is going to be some kind of truck depot — that change of use would be important because of the impact that it could have on the neighborhood. Falls Avenue is a highly density population area and Falls Avenue is a main arterial road that goes through that area serving many neighborhoods, therefore, they have quite a bit of traffic for a small area and this would only enhance that traffic and would bring in more disruptive traffic because it would be turning into a gravel parking lot which was erected by the owner Steph Robby and incidentally, without a permit, and also, that property is across the street from a children's bus stop, small children are getting on there and off there every school day and that would create a hazard for them. Mr. Stephen said that he would hate to think of a gravel parking lot with trucks going in there all the time, what kind of residuals are going to be spewed out into homes and streets — he said that he is annoyed — it will have a negative impact on Falls Avenue." (Supplemental ROR, Exh. E, 7, p. 4-5). Finally, the two letters from Mr. Desiderio, one of the owners of Steph Robby, LLC, are written on the letterhead of Brass City Fuel Company. (ROR, Exh. B, 9, 10).
Although Steph Robby claimed that it was intending to continue the nonconforming manufacturing use of the property (See Supplemental ROR, Exh. E, 7, p. 12), there is evidence in the record to support the finding that Steph Robby was already using the property for a non-manufacturing use (i.e., parking of oil trucks). "[E]ven if a property owner does not verbally declare his intention to abandon a use, his actions in stopping one use CT Page 6215 and changing to a different use is evidence of intent to abandon." Casertano v. Zoning Board of Appeals, Superior Court, judicial district of New Haven, Docket No. 342348 (January 7, 1994, Gordon, J.). There is evidence in the record that Steph Robby is using the property in a manner inconsistent with the prior nonconforming use. This evidence may be considered as evidence of Steph Robby's intent to abandon the nonconforming use of the property.
There are several cases which hold that a nonconforming use was abandoned when the use was changed to a use different from the prior nonconforming use. See Blum v. Lisbon Leasing Corp., 173 Conn. 175, 377 A.2d 280 (1977) (prior nonconforming use of a gasoline filling station and automobile repair shop was abandoned when use was changed to a tire recapping manufactory, a retail tire store, a radiator repair shop, a tire storage center, a trucking terminal and a tire dump); Darien v. Webb,115 Conn. 581, 162 A. 690 (1932) (nonconforming use as a restaurant and tea room was abandoned when property was used for a conforming residential use); Newton v. Zoning Board of Appeals, Superior Court, judicial district of New Haven, Docket No. 331610 (June 3, 1993, Burns, J.) (nonconforming use of property as a private storage and repair area for construction equipment and trucks was abandoned when the use was changed from private to public car and truck repair); Spicer Plus v. Groton Zoning Board of Appeals,
Superior Court, judicial district of New London, Docket No. 521198 (October 26, 1992, Hurley, J.) (nonconforming use of property as an automobile repair and fuel sales was abandoned when use was changed to repair of vehicles in a private operation).
The prior nonconforming use in the case here was electroplating manufacturing. (ROR, Exh. A). The record reveals that, at the time of the Commission's decision, Steph Robby had already started to use the property for the parking of oil trucks and other vehicles. Unlike in the above cited cases, the use that Steph Robby is already engaging in is very different from the prior nonconforming manufacturing use. Steph Robby's inconsistent use is evidence of Steph Robby's intent to abandon the prior nonconforming electroplating manufacturing use of the Property.
In addition to finding that the existence of an intent to abandon, the abandonment must be found to be voluntary. Cummingsv. Tripp, supra, 204 Conn. 93. Although the Commission did not make an explicit finding that the abandonment was voluntary, the CT Page 6216 Commission, after reviewing the evidence in the record, inferred as a fact from the circumstances that the abandonment was voluntary. The record as discussed previously substantially supports this finding.
The facts in this case closely parallel the facts in SpicerPlus v. Groton Zoning Board of Appeals, Superior Court, judicial district of New London at New London, Docket No. 521198 (October 26, 1992, Hurley, J.). In Spicer Plus, the court upheld a zoning board of appeals decision that found: "(1) no public business being conducted on the site; (2) no payment of personal property taxes for two years; (3) a request and approval of a site plan on March 15, 1988 for a purpose other than the nonconforming use; (4) the physical condition of the property indicated that no business is being conducted; and (5) no current business license for the site." Similarly, the evidence here reveals that no personal property taxes had been assessed since 1991, that real estate taxes were in arrears since 1991 as evidence by the tax liens until the SBA paid them, that no business activity was being conducted on the site since at least 1994, and that the condition of the property indicated that no business had been conducted on the site for a long time. Based on these factual findings, the Commission's decision that the prior nonconforming use has been abandoned is reasonably supported by the record and the case law.
The court finds that the Commission's decision is supported by substantial evidence in the record. The record substantially supports the Commission's finding that there was a voluntary and intentional abandonment of the prior nonconforming use because there had been no active business presence on the property for a substantial period of time, the property had been vacant, deteriorated and abandoned, all the personal property had been removed from the Property and Steph Robby's use of the property to park oil trucks was inconsistent with the prior nonconforming manufacturing use. Steph Robby failed to meet its burden of proof to provide sufficient evidence that the nonconforming use was continuous and that there was no intent to abandon the nonconforming use.
Since the court finds that there was substantial evidence in the record to support the Commission's decision, it need not address the Steph Robby's second issue of what use may be engaged in on the Property. CT Page 6217
The court, therefore, denies Steph Robby's appeal and affirms the decision of the Commission.
GILL, J.